# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## KANDIL-ELSAYED v F & E OIL, INC
## PINSKY v KROGER CO OF MICH

Docket Nos. 162907 and 163430. Argued on application for leave to appeal March 2, 2023. Decided July 28, 2023.

In Docket No. 162907, Ahlam Kandil-Elsayed filed a negligence action based on premises liability in the Wayne Circuit Court against F & E Oil, Inc., after she slipped and fell at a gas station defendant operated. Plaintiff argued that the snow and ice on the premises constituted a dangerous condition. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that because the condition was open and obvious and had no special aspects, it did not owe plaintiff a duty of care. Plaintiff responded that defendant did owe her a duty of care because the condition, while open and obvious, was effectively unavoidable. The trial court, David J. Allen, J., granted defendant summary disposition, and plaintiff appealed. The Court of Appeals, LETICA, P.J., and CAVANAGH and FORT HOOD, JJ., affirmed in an unpublished per curiam opinion issued March 11, 2021 (Docket No. 350220). Plaintiff applied for leave to appeal in the Supreme Court, and the Court scheduled and heard oral argument on the application, directing plaintiff to brief whether *Lugo v Ameritech Corp, Inc*, 464 Mich 512 (2001), was consistent with Michigan's comparative-negligence framework and, if not, what approach the Court should adopt for analyzing premises-liability cases under a comparative-negligence framework. 509 Mich 857 (2022).

In Docket No. 163430, Renee Pinsky and her husband, David Pinsky, brought a negligence action based on premises liability in the Washtenaw Circuit Court against Kroger Company of Michigan after Renee Pinsky tripped over a cable that had been strung from a checkout counter to a display basket. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that because the hazard was open and obvious and no special aspects were present, it owed no duty to plaintiff. The trial court, Timothy P. Connors, J., denied the motion for summary disposition, and defendant appealed. The Court of Appeals, CAMERON, P.J., and BORRELLO and REDFORD, JJ., reversed in an unpublished per curiam opinion issued May 27, 2021 (Docket No. 351025), and remanded for entry of an order granting defendant summary disposition, holding that the cable was open and obvious and not unreasonably dangerous as a matter of law. Plaintiffs applied for leave to appeal in the Supreme Court, and the Court scheduled and heard oral argument on the application, having specified that plaintiffs should brief the same issues as in Docket No. 162907 and that the cases would be argued at the same session. 509 Mich 954 (2022).

In an opinion by Chief Justice CLEMENT, joined by Justices BERNSTEIN, CAVANAGH, WELCH, and BOLDEN, the Supreme Court *held*:

A land possessor owes a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land. *Lugo*'s holding that the open and obvious danger doctrine is relevant to the defendant's duty is overruled. While the open and obvious nature of a condition remains relevant in a negligence case based on premises liability, it is analyzed as part of breach and comparative fault, not duty. The special-aspects doctrine in *Lugo*—which held that land possessors could be held liable for an open and obvious condition only when an invitee provided evidence of special aspects of the condition, such as when the condition was effectively unavoidable or presented a substantial risk of death or severe injury, was overruled to the extent it was inconsistent with the standard in § 343A of the Second Restatement of Torts, which asks whether the land possessor should have anticipated the harm. Although defendants in both cases owed a duty to the respective injured plaintiffs, there remained genuine issues of fact that were relevant to whether the defendants breached that duty and if so, whether plaintiffs were comparatively at fault and should have their damages reduced. The judgments of the Court of Appeals were reversed, and both cases were remanded for further proceedings.

1. All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm. In the context of premises liability, a landowner's duty to a visitor depends on whether the visitor is a trespasser, a licensee, or an invitee. Because plaintiffs in these cases were invitees, defendants owed them a duty to exercise reasonable care to protect them from an unreasonable risk of harm caused by a dangerous condition of the land. Whether a defendant owes an actionable legal duty to a plaintiff is a question of law that the court decides, and whether a defendant breached that duty is a question of fact for the jury.

2. Michigan formerly considered contributory negligence to be a complete bar to recovery in a negligence action, and the open and obvious nature of a particular danger was relevant to a court's assessment of whether a plaintiff had been contributorily negligent. In developing its premises-liability law during this era, Michigan courts treated the Restatement of Torts as persuasive and occasionally adopted parts of the Restatement into the common law. Specifically, courts relied on § 343 of the First Restatement of Torts for the rule that a land possessor was subject to liability for bodily harm caused to business visitors only with respect to conditions involving an unreasonable risk to them, but if the landowner had reason to believe the business visitor would discover the condition or realize the risk it involved, the landowner was not subject to liability. Neither § 343 of the First Restatement nor the cases relying on it made clear which part of this analysis involved the element of duty and which involved breach. This analysis changed in 1965 with the publication of the Second Restatement of Torts. Under the revised § 343, landowners were still subject to liability to business visitors—now categorized as "invitees"—only for conditions that involved an unreasonable risk of harm, and they were still generally not liable for dangers that were known or obvious to the invitee. However, under § 343A, landowners would face liability if they should have anticipated the harm despite such knowledge or obviousness. It

remained unclear which pieces of this analysis fell under duty or breach, and therefore which aspects of the analysis should be decided by the judge versus the jury.

3. In 1979, Michigan abolished the doctrine of contributory negligence and replaced it with the modern scheme of comparative fault, a version of which the Legislature codified in MCL 600.2957 through MCL 600.2959. While the caselaw that followed continued to muddy the waters between which components of the open and obvious danger doctrine pertained to duty and which to breach, the statutory scheme made clear that determinations of comparative fault were to be made by the jury rather than the judge. In 2001, *Lugo* squarely situated the open and obvious danger doctrine in the element of duty. *Lugo* also held that if there are "special aspects" of a condition that make even an open and obvious risk unreasonably dangerous, then the possessor has a duty to undertake reasonable precautions to protect invitees from that risk. This placed the rule in § 343, the "open and obvious" exception in § 343A, and any exception to that exception within the element of duty, which is a question of law. *Lugo* presented two illustrations of the type of "special aspects" that give rise to a duty: a commercial building with only one exit for the general public where the floor is covered with standing water, which would render the open and obvious condition "effectively unavoidable," and an unguarded 30-foot-deep pit in the middle of a parking lot, which would present a substantial risk of death or severe injury. *Lugo* thus created what some jurists viewed as an inherent tension between its narrow "special aspects" illustrations and the broader anticipation-of-harm standard imposed on land possessors in § 343A of the Second Restatement. The Third Restatement of Torts has since largely eliminated status-based categories in its presentation of premises-liability law and created one general duty of reasonable care owed to anyone who entered a land possessor's property, except for certain trespassers. It also stated that whether a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed and does not pretermit the land possessor's liability, thus situating the analysis in the element of breach rather than duty. The Second Restatement approach remains the governing approach in Michigan.

4. Reaching the conclusion that *Lugo* must be overruled requires an analysis of whether it was wrongly decided, whether it defies practical workability, whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the decision. First, *Lugo* was wrongly decided because, by concluding that the open and obvious danger doctrine and any exceptions to it are a part of the duty analysis, it ran afoul of Michigan's commitment to comparative fault. And by announcing the special-aspects test, *Lugo* created confusion as to what the exceptions to the open and obvious danger doctrine would be. While the doctrine might have been intended simply to illustrate the broader anticipation standard, it has not functioned that way in practice. Second, *Lugo* defied practical workability because it generated confusion among courts trying to apply it and sowed division. *Lugo* itself was a divided decision; the author of the earlier decision on which the special-aspects doctrine purported to rely disagreed with *Lugo*'s characterization of his own analysis, and jurists on the Supreme Court and the Court of Appeals have repeatedly called it into question and disagreed over how to apply it. Third, although *Lugo* has been on the books and relied on by practitioners and courts for more than 20 years, given the uncertainty and division it has generated, it cannot be said to be so accepted and so fundamental as to create real-world dislocations if changed. Overruling *Lugo* would end two decades of uncertainty and arguments over its unclear standard and varying applications. Finally, no changes

in the law or facts weighed either for or against overruling *Lugo*, apart from *Lugo*'s own failure to account for the shift to a comparative-fault regime. Accordingly, *Lugo* was overruled.

5. Several aspects of Michigan's existing premises-liability jurisprudence remained viable in Michigan. Land possessors continue to have a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land. The three traditional status-based categories—licensee, invitee, and trespasser—remained. The open and obvious nature of a condition remained a relevant inquiry in a premises-liability case; however, to the extent prior cases have held that it should be analyzed as a part of a land possessor's duty, those cases are overruled. Rather, the open and obvious nature of a danger is relevant to the defendant's breach and the plaintiff's comparative fault. This change found support from caselaw and statutory law articulating Michigan's shift from contributory negligence to comparative fault; from § 51 of the Third Restatement and its commentary, and from the fact that the change effectuated the same policy goals that undergirded the Court's premises-liability decisions spanning before and after *Lugo*; namely, that landowners must act reasonably to guard against harms that threaten those who enter their land and that landowners are not charged with guaranteeing the safety of every person who comes onto their land. Further, the special-aspects doctrine was overruled to the extent that it departed from the anticipation-of-harm standard in § 343A of the Second Restatement. Rather than conduct a narrow analysis of whether an obvious danger is "effectively unavoidable" or poses an "unreasonable risk of severe harm," the fact-finder should consider whether the possessor should anticipate the harm despite such obviousness, and it should do so in connection with its analysis of whether the land possessor breached their duty. In sum, a land possessor owes a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land. If the plaintiff establishes that the land possessor owed plaintiff a duty, the next step in the inquiry is whether there was a breach of that duty. As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it.

Court of Appeals judgments reversed, and cases remanded for further proceedings.

Justice BERNSTEIN, concurring, wrote separately to suggest that the Court consider how the open and obvious danger test ought to apply to people with disabilities, particularly vision impairments, given that certain conditions of the land that might be appreciated by a reasonably prudent nondisabled person might not be appreciated by a reasonably prudent blind or otherwise disabled person. He noted that the Court had never fully explored how the open and obvious danger doctrine should be applied to people with disabilities and instead had held that premises-liability actions do not allow the fact-finder to consider a plaintiff's objective characteristics. In the absence of clear direction from this Court, several unpublished Court of Appeals decisions had concluded that a plaintiff's disabilities do not alter the open and obvious danger analysis. Thus, this state's caselaw has placed disabled people at a disadvantage compared to their nondisabled counterparts. Justice BERNSTEIN expressed the hope that, as the Court continued to shift its

premises-liability jurisprudence to more equitable grounds, the Court would soon take up and resolve the jurisprudentially significant question of whether a plaintiff's disability is a relevant factor in an open and obvious danger analysis.

Justice ZAHRA, dissenting, agreed with Justice VIVIANO that § 343A of the Second Restatement of Torts constituted the appropriate standard for analyzing the duty element of a negligence action based on premises liability and that the special-aspects doctrine was simply an application of the Restatement. He wrote to clarify that this Court was not required to adopt any aspect of any version of the Restatement of Torts, particularly in light of the American Law Institute's movement away from treating its Restatements of the Law as summaries of particular areas of the common law and toward advocating for changes in the law. He stated that *Lugo*'s special-aspects exception from the general rule that open and obvious dangers do not give rise to liability could be understood as consistent with § 343A of the Second Restatement in that even an open and obvious condition remains unreasonable, and thus a special aspect, where the possessor should anticipate the harm from that condition despite its obviousness. He also wrote separately to emphasize that, even under this Second Restatement approach, the open and obvious danger doctrine, including the special-aspects exception, should remain focused on the objective nature of the condition of the land rather than an individual plaintiff's ability or desire to avoid a dangerous condition, given that the nature of a readily observable condition does not change on the basis of a plaintiff's personal obligations or responsibilities. He further stated that the majority opinion failed to persuasively show why jurisprudential principles of stare decisis should be ignored and decades of caselaw disregarded. He also echoed Justice VIVIANO's concerns that the majority's ruling would expand liability and destabilize Michigan's negligence law.

Justice VIVIANO, joined by Justice ZAHRA, dissenting, disagreed with the majority's decision to do away with what he described as a commonsense rule that has served Michiganders since the nineteenth century. He stated that the open and obvious danger doctrine was premised on the straightforward notion that, as a general rule, those who possess real property need not rectify hazards on their property that are easy for others to see and avoid, such as plainly visible snow or ice, because the common law has long treated the scope of a land possessor's duty as limited to those harms that are foreseeable. Given the nature of open and obvious conditions, it was rightly thought that those who enter the property of another would detect such hazards and avoid them if possible, thus rendering any resulting harm from a person's failure to do so unforeseeable. Justice VIVIANO also stated that the majority misleadingly suggested that this Court's caselaw was unclear whether the open and obvious danger doctrine was part of the duty element. He stated that the majority largely ignored the Court's repeated statements that the doctrine was part of duty. He further stated that the Court's precedent had addressed and rejected the arguments the majority accepted that the adoption of comparative negligence affected the application of the open and obvious danger doctrine. He further stated that the majority ignored this Court's caselaw holding that the fact-finder had a role in resolving questions about the scope of duty when the doctrine was at issue. Justice VIVIANO expressed concern that, after the majority's decision, all those who possessed real property in Michigan would have to immediately rectify obvious hazards on their land to avoid being subject to civil liability. He stated that the majority had done away with any meaningful conception of the element of duty by relying on flawed rationales and an incomplete and mistaken reading of Michigan caselaw, particularly with regard to the effect of the shift from contributory to comparative negligence on the open and

obvious danger doctrine.  Justice VIVIANO would have reconfirmed that §§ 343 and 343A of the Second Restatement of Torts establish the test for the open and obvious danger doctrine and that the doctrine relates to the element of duty rather than breach.  He characterized the majority's decision as having the potential to wreak havoc in negligence law generally by expanding liability, leading to more litigation, and destabilizing the law.  He would have affirmed the decisions granting summary disposition to defendants in both cases.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 28, 2023

STATE OF MICHIGAN

SUPREME COURT

AHLAM KANDIL-ELSAYED,

       Plaintiff-Appellant,

v

       No. 162907

F & E OIL, INC.,

       Defendant-Appellee.

_____

RENEE PINSKY and DAVID PINSKY,

       Plaintiffs-Appellants,

v

       No. 163430

KROGER CO. OF MICHIGAN,

       Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

CLEMENT, C.J.

In these combined cases, we must determine the appropriate legal framework to apply when an invitee is harmed by a condition on a land possessor's property. In *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516-517; 629 NW2d 384 (2001), we held that courts must analyze both the open and obvious danger doctrine and any exceptions to it under the element of duty. The *Lugo* Court also held that if a danger is open and obvious, only where an invitee "provide[s] evidence of special aspects of the condition" will the invitor still owe a duty of care. *Id*. at 514. We conclude that *Lugo* was wrongly decided and must be overruled in two respects. First, we overrule *Lugo*'s decision to make the open and obvious danger doctrine a part of a land possessor's duty. Rather, we hold that the open and obvious nature of a condition is relevant to breach and the parties' comparative fault. Second, we overrule the special-aspects doctrine and hold that when a land possessor should anticipate the harm that results from an open and obvious condition, despite its obviousness, the possessor is not relieved of the duty of reasonable care.

Under the new framework announced today, we conclude that while in each case the defendant owed the injured plaintiff a duty of care, genuine issues of material fact remain as to whether they breached that duty and, if so, whether the plaintiffs were comparatively at fault such that their damages must be reduced. Therefore, we reverse the judgment of the Court of Appeals affirming the trial court's grant of summary disposition in both cases and remand for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

A. *KANDIL-ELSAYED v F & E OIL, INC*

The plaintiff, Ahlam Kandil-Elsayed, stopped for gas at a gas station operated by the defendant, F & E Oil, Inc., on a snowy evening. She parked at the pump and began

walking toward the gas station building to pay in advance with cash. The path between the pump and the building was covered in snow, and it did not appear to have been shoveled or salted. The plaintiff testified that she believed there was ice underneath the snow. She slipped, fell, and injured herself. After recovering from her fall, she entered the building to pay. She testified that on the way back to her car, she retraced her steps, attempting to avoid the exact spot where she had fallen. When questioned, she acknowledged that she "could clearly see the paved surface in front of her" and the snow on top of it.

The plaintiff filed a negligence action against the defendant based on premises liability, arguing that the snow and ice constituted a dangerous condition on the defendant's premises. The defendant moved for summary disposition under MCR 2.116(C)(10), arguing that the condition was open and obvious and contained no special aspects; therefore, it did not owe the plaintiff a duty of care. In response, while the plaintiff conceded that the condition was open and obvious, she argued that it was effectively unavoidable and that therefore the defendant still owed her a duty of care. The trial court granted summary disposition to the defendant and the plaintiff appealed. The Court of Appeals affirmed. *Kandil-Elsayed v F & E Oil, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 11, 2021 (Docket No. 350220).

The Court of Appeals agreed with the trial court that no genuine issue of material fact remained as to whether the snow and ice were effectively unavoidable. *Id*. at 1. Because the parties agreed that the plaintiff was an invitee, the panel noted that the defendant owed her a duty " 'to exercise reasonable care to protect [her] from an unreasonable risk of harm caused by a dangerous condition on the land.' " *Id*. at 2, quoting *Lugo*, 464 Mich at 516. And because the parties agreed that the danger was open and

3

obvious, the defendant owed no duty to the plaintiff "unless there [were] special aspects of the condition," which would have existed when the condition " 'remain[ed] unreasonably dangerous or when it [was] effectively unavoidable.' " *Kandil-Elsayed*, unpub op at 2, quoting *Wilson v BRK, Inc*, 328 Mich App 505, 513; 938 NW2d 761 (2019).

The plaintiff argued that the condition was effectively unavoidable, i.e., " 'one that a person [was] required to confront under the circumstances.' " *Kandil-Elsayed*, unpub op at 2, quoting *Hoffner v Lanctoe*, 492 Mich 450, 472; 821 NW2d 88 (2012). The panel disagreed that the plaintiff was required to confront the snow and ice, concluding that the hazard was not effectively unavoidable. *Id*. It noted that the plaintiff admitted she had chosen to confront the hazard instead of simply leaving the gas station and going elsewhere, or perhaps calling the attendant in the building to come out and assist her. *Id*.

The plaintiff then sought leave to appeal in this Court, and we ordered oral argument on the application to address three issues:

> (1) whether there was a question of fact concerning whether the parking lot constituted an effectively unavoidable condition; (2) whether *Lugo* . . . is consistent with Michigan's comparative negligence framework; and if not, (3) which approach the Court should adopt for analyzing premises liability cases under a comparative negligence framework. [*Kandil-Elsayed v F & E Oil, Inc*, 509 Mich 857 (2022) (citations omitted).]

## B. *PINSKY v KROGER CO OF MICH*

The plaintiff, Renee Pinsky, was shopping with her husband at a grocery store owned by Kroger Company of Michigan when she tripped, fell, and injured herself. At the time of the accident, she was checking out and realized that she had accidentally selected an open bag of flour. The clerk ringing up her groceries told the plaintiff that she could go

4

back into the store and get a replacement bag. The plaintiff parked her shopping cart at the end of the checkout lane and walked through the adjacent checkout lane.

The adjacent lane was wider, with a checkout counter on one side and a cigarette display case on the other. Unbeknownst to the plaintiff, an employee had strung a thin cable from the checkout counter to a two-tier wire basket placed in the middle of the lane to indicate that it was closed. Both the top and bottom wire baskets had baby formula in them, and there was a display sign attached to the top basket. The parties dispute the precise placement and height of the cable at the time of injury. As the plaintiff turned to head back into the store, she tripped over the cable and fell. The plaintiff testified that she was looking forward into the store at the time and did not notice the cable. In her deposition, she admitted that the cable was visible in the postaccident photographs.

The plaintiffs filed a premises-liability negligence action against the defendant. At the close of discovery, the defendant moved for summary disposition under MCR 2.116(C)(10), arguing that because the hazard was open and obvious and no special aspects were present, it owed no duty to the plaintiff. The trial court denied the motion, concluding that issues of fact remained. The defendant then applied for leave to appeal in the Court of Appeals, which granted leave and reversed the trial court. *Pinsky v Kroger Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 351025).

The Court of Appeals first held that the cable was open and obvious as a matter of law, reversing the trial court's denial of the defendant's motion for summary disposition. *Id*. at 2. The panel explained that determining whether a danger was open and obvious required asking "whether the hazard was observable to the average, casual observer," not

5

a specific plaintiff. *Id*. at 3. It concluded that "the evidence established that the cable over which [the plaintiff] tripped constituted an open and obvious danger," because there was no evidence of insufficient lighting nor anything obstructing her view. *Id*. And the plaintiff had testified that she could see the cable clearly in the postaccident photographs. Therefore, the panel concluded, an "average person in the same situation could have seen the cable upon casual inspection." *Id*. The evidence showed that "had she been looking at her path through the checkout lane and observed the open and obvious cable," the plaintiff would not have been injured. *Id*. at 4.

Next, the Court of Appeals concluded that the cable was not unreasonably dangerous as a matter of law. *Id*. It explained that a condition is unreasonably dangerous "if it pose[s] 'a substantial risk of death or severe injury.' " *Id*., quoting *Lugo*, 464 Mich at 518. Because "[a] checkout lane closed by a cable is an everyday occurrence" that does not create "an unreasonable risk of severe harm," it was not unreasonably dangerous. *Id*. Having concluded that the cable was open and obvious and presented no special aspects, the panel held the defendant was entitled to summary disposition.

The plaintiffs sought leave to appeal here, and we ordered oral argument on the application to address whether:

> (1) there is a question of fact concerning whether the cable used to close off the checkout lane was open and obvious; (2) there is a question of fact concerning whether the condition was unreasonably dangerous; (3) under *Estate of Livings v Sage's Investment Group, LLC*, 507 Mich 328 (2021), *Lugo . . .* , and 2 Restatement Torts, 2d, § 343A, the open and obvious doctrine does not preclude relief where a land possessor should anticipate the harm; and (4) liability should be precluded in Michigan even if the danger posed by a condition on land is open and obvious without special aspects as defined by *Lugo*, or whether the open and obvious nature of a condition should be a consideration for the jury in assessing the comparative fault of

6

the parties as set forth in the Restatement Torts, 3d.  [*Pinsky v Kroger Co of Mich*, 509 Mich 954, 954-955 (2022).]

## II.  STANDARD OF REVIEW

" 'We review de novo a trial court's decision on a motion for summary disposition.' " *Mecosta Co Med Ctr v Metro Group Prop & Cas Ins Co*, 509 Mich 276, 282; 938 NW2d 401 (2022), quoting *Meemic Ins Co v Fortson*, 506 Mich 287, 296; 954 NW2d 115 (2020).  This Court also " 'review[s] de novo the interpretation of a common-law doctrine.' " *Mecosta*, 509 Mich at 282, quoting *Bertin v Mann*, 502 Mich 603, 608; 918 NW2d 707 (2018).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint." *American Civil Liberties Union of Mich v Calhoun Co Sheriff's Office*, 509 Mich 1, 9; 938 NW2d 300 (2022).  A trial court " 'considers affidavits, pleadings, depositions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion.' " *Id*., quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).  A court's role at the summary disposition stage is narrow; "[i]n its review of the evidence, the court cannot make findings of fact." *Doster v Covenant Med Ctr, Inc*, 509 Mich 910, 911 (2022).  Only " '[w]here the proffered evidence fails to establish a genuine issue regarding any material fact' " is the moving party " 'entitled to a judgment as a matter of law.' " *American Civil Liberties Union*, 509 Mich at 9, quoting *Maiden*, 461 Mich at 120.  "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

7

## III. LEGAL BACKGROUND

## A. THE BASIC CONTOURS OF DUTY AND BREACH

All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm. The first element, duty, "is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Simonds v Tibbitts*, 165 Mich App 480, 483; 419 NW2d 5 (1987). Beyond the relationship between the parties, courts consider additional facts to determine whether there is a duty, including: "(1) foreseeability of the harm, (2) degree of certainty of injury, (3) closeness of connection between the conduct and injury, (4) moral blame attached to the conduct, (5) policy of preventing future harm, and (6) the burdens and consequences of imposing a duty and the resulting liability for breach." *Rowland v Independence Village of Oxford, LLC*, 509 Mich 992, 992 (2022), citing *Valcaniant v Detroit Edison Co*, 470 Mich 82, 86; 679 NW2d 689 (2004). Overall, duty is " 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' " *Buczkowski v McKay*, 441 Mich 96, 100-101; 490 NW2d 330 (1992), quoting Prosser & Keeton, Torts (5th ed), § 53, p 358.[1]

---

[1] The dissent critiques the idea that " '[a]t its core, duty . . . inescapably involves matters of policy.' " *Post* at 28, quoting Cardi, *Purging Foreseeability*, 58 Vand L Rev 739, 762 (2005). But the idea that duty is an expression of policy is neither new nor controversial. See, e.g., *In re Certified Question from the Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 505; 740 NW2d 206 (2007), citing *Buczkowski*, 441 Mich at 100-101; *Brown v Brown*, 478 Mich 545, 553; 739 NW2 313 (2007), citing *Buczkowski*, 441 Mich at 100-101.

In the context of premises liability, "a landowner's duty to a visitor depends on that visitor's status." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000), citing *Wymer v Holmes*, 429 Mich 66, 71 n 1; 412 NW2d 213 (1987), overruled on other grounds by *Neal v Wilkes*, 470 Mich 661 (2004). "Historically, Michigan has recognized three common-law categories for persons who enter upon the land or premises of another: (1) trespasser, (2) licensee, or (3) invitee." *Stitt*, 462 Mich at 596. It is undisputed that the plaintiffs in these cases were invitees. An "invitee" is " 'a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception.' " *Id*. at 596-597, quoting *Wymer*, 492 Mich at 71 n 1 (alterations in *Stitt*). Generally speaking, "invitee status is commonly afforded to persons entering upon the property of another for business purposes." *Stitt*, 462 Mich at 597.

Land possessors share a special relationship with invitees that generates "an affirmative duty to protect." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 499; 418 NW2d 381 (1988). It is the social policy of this state that, given this special relationship, "an invitee is entitled to the highest level of protection under premises liability law." *Stitt*, 463 Mich at 597. Land possessors owe a duty "to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995).

It is well settled in Michigan that "the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides." *In re Certified Question from the Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 504; 740

9

NW2d 206 (2007), quoting *Friedman v Dozorc*, 412 Mich 1, 22; 312 NW2d 585 (1981).

And, in contrast, the question of breach—"whether defendants' conduct in the particular

case is below the general standard of care"—is a question of fact for the jury. *Rowland*,

509 Mich 992, quoting *Clark v Dalman*, 379 Mich 251, 260-261; 150 NW2d 755 (1967).[2]

## B. PREMISES LIABILITY AND THE SHIFT TO COMPARATIVE FAULT

Understanding the development of and interaction between premises liability and

comparative fault is key to understanding these cases. Simply put, Michigan's premises-

liability jurisprudence cannot be properly understood without a coordinate analysis of the

shift from contributory negligence to comparative fault in this state.

### 1. THE CONTRIBUTORY-NEGLIGENCE ERA

Michigan, like many other jurisdictions, once recognized the defensive doctrine of

contributory negligence in tort actions. Under a contributory-negligence scheme, where

the plaintiff's injury "resulted from the fault or negligence of himself, or where it has

resulted from the fault or negligence of both parties," the plaintiff was completely barred

from recovery. *Williams v Mich Central R Co*, 2 Mich 259, 265 (1851). No matter how

small the portion of fault attributed to the plaintiff, it served as an absolute bar to recovery.

The open and obvious nature of a particular danger was relevant to a court's

assessment of whether the plaintiff was contributorily negligent. See *Leary v Houghton*

---

[2] The default rule that duty is settled by the judge and breach is settled by the jury does not always play out in practice. Where the evidence presented to a court concerning duty generates a question of fact, that question can be submitted to the jury for resolution. Correlatively, where the evidence presented to a court concerning breach generates no questions of fact, the issue can be decided by the judge as a matter of law. See MCR 2.116(C)(10).

*Co Traction Co*, 171 Mich 365, 370; 137 NW 225 (1912) ("[I]f the defect or danger is visible and obvious, the failure of a person to discover and avoid it amounts to contributory negligence.") (quotation marks and citation omitted). To determine whether a danger was open and obvious, courts asked whether the plaintiff was "bound by [their own] knowledge to anticipate" a danger. *Boylen v Berkey & Gay Furniture Co*, 260 Mich 211, 219; 244 NW 451 (1932).

*Goodman v Theatre Parking, Inc*, 286 Mich 80; 281 NW 545 (1938), provides a simple illustration of these ideas in context. The plaintiff, an invitee, had been parking his car in the defendant's lot for years. *Id*. at 81. One day, when exiting the lot, he stepped on a cinder and injured himself. *Id*. The *Goodman* Court concluded the plaintiff could not recover because "[i]f the cinder was as large as claimed by plaintiff it was plainly discernable." *Id*. at 82. Therefore, "even if defendant was negligent in permitting the cinder to remain upon the lot, plaintiff's contributory negligence bars recovery." *Id*. at 83. As *Goodman* shows, courts looked to the open and obvious nature of a particular danger to assess whether the plaintiff, in failing to appreciate its dangerousness, was contributorily negligent in confronting it and therefore completely barred from recovery.[3]

---

[3] We agree completely with the dissent that "[i]n a contributory negligence regime, it did not much matter" whether a court analyzed the open and obvious nature of a danger under element of duty or contributory negligence because "[t]here was no need for a court to specify the exact grounding of the doctrine" given that "the underlying theories all resulted in dismissal." What the dissent fails to grapple with is the seismic shift in Michigan's jurisprudence away from such a regime and toward our current regime of comparative fault. Under a comparative-fault regime, the element under which a court analyzes the open and obvious nature of a danger matters a great deal.

11

With a background rule of contributory negligence firmly in place, premises-liability law was also developing in Michigan. And from early on, Michigan's premises-liability jurisprudence was in direct conversation with the Restatement of Torts. The Court has treated the Restatement of Torts as "persuasive authority that [the Court] can look to . . . in undertaking [its] duty to develop the common law." *Livings Estate v Sage's Investment Group, LLC*, 507 Mich 328, 345 n 12; 968 NW2d 397 (2021). While Michigan courts are not bound by the Restatement, in premises-liability cases, they have favorably cited the standards contained therein and even purported to "adopt" portions of the Restatement into our common law.

The First Restatement of Torts articulated a multipart standard for assessing when a land possessor may be "subject to liability" for harm to a "business visitor[]," i.e., someone closely aligned with the modern definition of an invitee. 2 Restatement Torts, § 343, p 938. It stated in full:

> A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he
>
> (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and
>
> (b) has no reason to believe that they will discover the condition or realize the risk involved therein, and
>
> (c) invites or permits them to enter or remain upon the land without exercising reasonable care
>
> (i) to make the condition reasonably safe, or
>
> (ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility. [*Id*. at 938-939.]

12

Put simply, under § 343 of the First Restatement, a land possessor was "subject to liability for bodily harm caused to business visitors" only with respect to "condition[s] . . . involving an unreasonable risk to them[.]" *Id*. at § 343(a), pp 938-939. But where the landowner had "reason to believe [the business visitor would] discover the condition or realize the risk involved therein," they were categorically not subject to liability. *Id*. at § 343(b), p 939. Therefore, § 343 of the First Restatement included both a liability rule and an exception to that rule.

Michigan courts relied on § 343 of the First Restatement "[a]s far back as 1938." *Livings*, 507 Mich at 343; see also *id*. at n 9 (collecting cases). Specifically, courts relied on § 343 to conclude that a defendant was not subject to liability because a particular condition did not constitute an "unreasonable risk." See, e.g., *Nash v Lewis*, 352 Mich 488, 490, 492; 90 NW2d 480 (1958); *Zeglowski v Polish Army Veterans Ass'n of Mich, Inc*, 363 Mich 583, 586; 110 NW2d 578 (1961). And courts also relied on § 343 to assess whether a defendant was not subject to liability because a business visitor should have "discover[ed] the condition or realize[d] the risk involved within," in other words, because the visitor was contributorily negligent. See, e.g., *Spear v Wineman*, 335 Mich 287, 290; 55 NW2d 833 (1952); *Goodman*, 286 Mich at 82-83.

Unfortunately, what neither § 343 of the First Restatement nor the cases relying on it make clear is what portion of the analysis—the rule, the exception, or both—falls under the element of "duty" versus the element of "breach." The ambiguity originates from the Restatement's choice to use the phrase "subject to liability." Liability, after all, is an amalgamation of all the elements of a tort; for a court to hold a defendant "liable" the plaintiff must prove duty, breach, causation, *and* harm.

The Second Restatement of Torts was published in 1965, ushering in some adjustments to the original standard for liability owed to an invitee. Two sections—§ 343 and § 343A—are relevant to our discussion. Section 343 of the Second Restatement states in full:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger. [2 Restatement Torts, 2d, § 343, pp 215-216.]

And § 343A states in relevant part:

> > (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness. [*Id.* at p 218.]

The basic contours of § 343 of the First Restatement remained in place in the Second Restatement's iteration. A landowner was still "subject to liability" to invitees—a category akin to the earlier "business visitor"—only where a condition "involve[d] an unreasonable risk of harm[.]" 2 Restatement Torts, 2d, § 343(a), p 215. And a landowner was still "not liable" where a danger was "known or obvious" to the invitee, *id.* at § 343A, p 218, an idea that pulls from the earlier "discover the condition or realize the risk" language from § 343(b) of the First Restatement. The major distinction between the First and Second Restatements pertained to "known or obvious" dangers. Whereas the First Restatement

14

precluded all liability for open and obvious dangers, the Second Restatement built in an exception. While landowners would not generally be "subject to liability" for such dangers, they would face liability if they "should anticipate the harm despite such knowledge or obviousness." 2 Restatement Torts, 2d, § 343A(1), p 218. In total, the Second Restatement included a rule, an exception, and a new exception to that exception.

The Second Restatement used the same ambiguous "subject to liability" language as the First Restatement, meaning that it remained unclear which pieces of its analysis fell under duty or breach—and therefore which aspects of the analysis should be decided by the judge versus the jury. *Livings*, 507 Mich at 381 (CLEMENT, J., dissenting). And unfortunately, caselaw relying on the Second Restatement has not provided much clarity.

For example, in *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 248; 235 NW2d 732 (1975), the Court addressed what framework to apply when an invitee was injured by the accumulation of snow and ice on a land possessor's property. The Court looked to an Alaska Supreme Court decision applying the Second Restatement for guidance. *Id.*, citing *Kremer v Carr's Food Center, Inc*, 462 P2d 747 (Alas, 1969). The Court described *Kremer* as providing an appropriate definition of "the legal duty owed by the invitor to the invitee." *Quinlivan*, 395 Mich at 260. But it quoted favorably from *Kremer* for the idea that " '[a] *jury* could have found' " that a land possessor " 'should have realized that this condition involved an unreasonable risk of harm' " that the " 'business invitees would not discover or realize' " or that the land possessor should otherwise " 'anticipate[]' " would cause harm. *Quinlivan*, 395 Mich at 259, quoting *Kremer*, 462 P2d at 749. This language suggests that the Court believed at least some of the analysis under § 343 and § 343A involved questions of fact for a jury to decide when determining breach

15

and contributory negligence, not duty. *Quinlivan*, 395 Mich at 261 ("[C]onduct of the invitee will often be relevant in the context of contributory negligence.").

## 2. THE ADVENT OF COMPARATIVE FAULT

In *Placek v Sterling Hts*, 405 Mich 638, 679; 275 NW2d 511 (1979), the Court abolished the doctrine of contributory negligence and replaced it with our modern scheme of comparative fault, finding it to be a more "just and equitable doctrine." The Court explained that since its inception, "the doctrine of contributory negligence has caused substantial injustice . . . ." *Id*. at 652. Commentators had long criticized the contributory-negligence rule for " 'visit[ing] the entire loss caused by the fault of two parties on one of them alone . . . .' " *Kirby v Larson*, 400 Mich 585, 622; 256 NW2d 400 (1977), quoting Prosser, *Comparative Negligence*, 51 Mich L Rev 465, 469 (1953). Worse still, contributory negligence foisted the full responsibility for an injury onto " 'the injured plaintiff, least able to bear it, and quite possibly much less at fault than the defendant who goes scot free.' " *Kirby*, 400 Mich at 622, quoting *Prosser*, 51 Mich L Rev at 469. The *Placek* Court adopted so-called "pure" comparative fault in Michigan, which attributes percentages of fault to each party and reduces the plaintiff's damages on the basis of their own percentage of fault. *Id*. at 660-662.

*Placek* represented a radical shift in tort jurisprudence in Michigan. In its wake, it was not clear whether particular aspects of the old contributory-negligence regime, like the open and obvious danger doctrine, survived. Then, in *Riddle v McLouth Steel Prods Corp*, 440 Mich 85; 485 NW2d 676 (1992), the Court directly addressed the interaction between that doctrine and comparative fault. *Riddle* involved an invitee who slipped on a puddle

16

of oil in a manufacturing facility. *Id*. at 88-89. On appeal, the defendant argued that it owed the plaintiff no duty, because the plaintiff "had knowledge of the presence of oil." *Id*. at 90. The Court of Appeals disagreed, concluding "that the 'no duty to warn of open and obvious danger' rule [was] inconsistent with comparative negligence and should be abolished." *Id*. at 95. Instead, the panel concluded that "the invitee's knowledge of a dangerous condition is properly considered as it relates to the invitee's negligence and mitigation of damages in accordance with comparative negligence principles." *Riddle v McLouth Steel Prods Corp*, 182 Mich App 259, 266; 451 NW2d 950 (1990), rev'd by *Riddle*, 440 Mich 85.

But this Court disagreed, explaining that "[t]he adoption of comparative negligence in Michigan [did] not abrogate the necessity of an initial finding that the premises owner owed a duty to invitees." *Riddle*, 440 Mich at 95. The two doctrines, in the Court's view, were mutually exclusive, because "[a] negligence action may only be maintained if a legal duty exists" in the first place. *Id*. at 96. Therefore, the Court concluded that only once a duty is established does it become relevant whether a plaintiff was contributorily or comparatively at fault.

In *Riddle*, ambiguity and disagreement continued over which pieces of the § 343 and § 343A analysis were a part of duty or breach. The *Riddle* majority specifically described § 343 as articulating the "duty" owed to an invitee, despite § 343's more ambiguous "subject to liability" language. *Id*. at 92 ("This Court adopted the definition provided in 2 Restatement Torts, 2d, § 343 of the general *legal duty* that a premises owner owes an invitee.") (emphasis added). And it seemed to describe § 343A as also articulating the "duty" owed, despite its more ambiguous "not liable" language. *Id*. at 94 ("[W]e held

17

that a possessor of land *does not owe a duty* to protect his invitees where conditions . . . are so obvious and apparent that an invitee may be expected to discover them himself.") (emphasis added). Therefore, *Riddle*'s recitation of the law suggests that the entirety of the analysis conducted under § 343 and § 343A is a question of duty. *Id.*

Justice LEVIN dissented, joined by then Chief Justice MICHAEL CAVANAGH, arguing that not every piece of § 343 and § 343A of the Second Restatement relates to duty. Rather, Justice LEVIN concluded, "[w]hether an invitor is negligent because he fails to warn an invitee of an open and obvious danger is a question of the standard of care required in a given set of circumstances, rather than a question of duty." *Id.* at 120 (LEVIN, J., dissenting). He noted a "tendency to analyze virtually every aspect of negligence in terms of 'duty.'" *Id.* Duty, he explained, was supposed to be a threshold analysis of whether the relationship between the parties generated an "obligation to observe some standard of care." *Id.* at 121. If that was all courts were analyzing under the duty element, then "the adoption of comparative negligence could not supersede the need to determine, as a matter of law, that a particular defendant did or did not owe" a duty to a particular plaintiff. *Id.* After all, an analysis of comparative fault presumes that the defendant both has a duty and has breached it. But by placing the open and obvious danger analysis in duty, Justice LEVIN argued that the majority created a *functional* conflict between the duty analysis and comparative fault:

> Thus, where it is said that "no duty" is owed by a particular defendant, in the sense that negligence or fault of the plaintiff contributed to the harm in a particular instance, or that a danger is open or obvious because of the plaintiff's subjective knowledge of the danger, comparative negligence would indeed abrogate the "no duty" rule because a plaintiff's contributory negligence does not bar recovery and a decision to encounter a dangerous

18

condition despite subjective knowledge of the peril is relevant in deciding the extent of the plaintiff's negligence. Application of comparative negligence principles would then call for the jury to apportion fault between the parties. [*Id.*]

Put simply, because the majority situated the open and obvious danger doctrine in duty, Justice LEVIN contended that it embedded an analysis of the plaintiff's own negligence in a threshold inquiry with the potential to cut off liability completely. But under a comparative-fault regime, a plaintiff's negligence is decidedly *not* supposed to cut off all liability. The solution, according to Justice LEVIN, would be to simply move the "open and obvious" analysis of § 343A to "standard of care, not duty . . . ." *Id.*[4]

A few years later, the Court again considered "the issue of the scope of the duty owed" to an invitee in *Bertrand*, 449 Mich at 609. Chief Justice CAVANAGH, who joined Justice LEVIN's dissent in *Riddle*, authored the majority.[5] Like the *Riddle* majority, the *Bertrand* majority reiterated that a land possessor owes a duty to " 'exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land,' " citing § 343 of the Second Restatement in support. *Id.*, quoting *Williams*, 429 Mich at 499.

---

[4] Interestingly, the *Riddle* majority seems to agree that in practice, questions of the open and obvious nature of a particular danger, and the landowner's anticipation of harm, are questions of breach for the jury, even though they label § 343A as speaking to duty, not breach. *Id.* at 97 ("If the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care . . . . What constitutes reasonable care under the circumstances must be determined from the facts of the case.").

[5] *Bertrand* generated both a dissent and a partial concurrence, but both separate opinions only took issue with the application to the facts, not the legal principles announced. See *id.* at 625 (WEAVER, J., concurring in part); *id.* at 626 (LEVIN, J., dissenting).

19

*Bertrand* involved two cases in which the plaintiffs had tripped and injured themselves on steps. In one, the plaintiff fell on two unmarked concrete steps just outside a bathroom door. *Id*. at 618-619. In the other, the plaintiff fell on an elevated walkway partially blocked by a vending machine. *Id*. at 621-622. The Court explained that "steps and differing floor levels were not ordinarily actionable *unless* unique circumstances surrounding the area in issue made the situation unreasonably dangerous" because of the steps' "special aspects." *Id*. at 614. If there was "something unusual about the steps, because of their 'character, location, or surrounding conditions,' " the duty remained, and the question went to whether there had been a breach of duty. *Id*. at 617, quoting *Garrett v WS Butterfield Theatres*, 261 Mich 262, 263-264; 246 NW 57 (1933).

*Bertrand*'s treatment of § 343A—which contains the open and obvious danger doctrine and the anticipation exception—continued to muddy the waters between duty and breach. First, *Bertrand* explained that "[w]here a condition is open and obvious, the scope of the possessor's duty may be limited," suggesting that the open and obvious danger doctrine is part of duty. *Bertrand*, 449 Mich at 610. But then, the majority explained that if "the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, . . . [t]he issue then becomes the standard of care and is for the jury to decide." *Id*. at 611. Quoting favorably from an illustration in the Second Restatement, the majority explained that in some cases, the fact that a danger is open and obvious " 'is not . . . conclusive in determining the duty of the possessor,' " because it " 'is important in determining whether the invitee is to be charged with contributory negligence . . . .' " *Id*. at 612, quoting 2 Restatement Torts, 2d, § 343A, comment *f*, p 220 (emphasis omitted).

This analysis suggests that the open and obvious danger doctrine will at times go to duty, and at other times, breach.[6]

Shortly after the *Bertrand* decision, the Legislature codified a modified comparative-fault regime by statute. Under MCL 600.2957(1), in a tort action, "the liability of each person shall be allocated . . . by the trier of fact and . . . in direct proportion to the person's percentage of fault." And "a plaintiff's contributory fault does not bar the plaintiff's recovery of damages." MCL 600.2958. Rather, "the court shall reduce the damages by the percentage of comparative fault of [the plaintiff]." MCL 600.2959.[7] These statutory sections not only made clear that comparative fault was the rule in Michigan, but they also emphasized that a determination of comparative fault was for the *jury*, not the judge.

---

[6] The dissent reads *Bertrand* as only discussing duty, not breach. It interprets *Bertrand*'s mention of questions of fact to mean that "questions of fact . . . concerning the scope of the *duty* under the doctrine" would go to the jury. (Emphasis added.) Notably, *Bertrand*'s author disagreed with the dissent here and instead agreed with our interpretation. See *Lugo*, 464 Mich at 539 (CAVANAGH, J., concurring) ("I continue to believe that *Bertrand* correctly focused on liability and on *breach*.") (emphasis added). Ultimately, what our disagreement over interpreting *Bertrand* proves is not necessarily that one interpretation is right and the other wrong, but that our caselaw has been mired in ambiguities that our decision aims to set straight.

[7] While irrelevant to the issues presented here, it's worth noting that the Legislature did modify *Placek*'s pure comparative-fault regime slightly. MCL 600.2959 explained that if the plaintiff's "percentage of fault is greater than the aggregate fault of the other person or persons, whether or not parties to the action, the court shall reduce economic damages by the percentage of comparative fault . . . and noneconomic damages shall not be awarded." Put simply, a plaintiff who is more than 50% at fault is barred from recovering noneconomic damages.

21

## 3. *LUGO v AMERITECH CORP*

In 2001, the Court again stepped in to address the appropriate legal framework to apply when an invitee was injured on a land possessor's property in *Lugo v Ameritech Corp, Inc*, 464 Mich 512. While walking across the defendant's parking lot, the plaintiff "apparently stepped in a pothole and fell." *Id*. at 514. The defendant successfully moved for summary disposition under MCR 2.116(C)(10), arguing that it had no duty to protect the plaintiff because the pothole was open and obvious. *Id*. at 515. On appeal, this Court affirmed, framing the case around "the extent of the open and obvious doctrine in premises liability cases." *Id*. at 516.

Once again, the *Lugo* majority reaffirmed the general duty owed to an invitee to "exercise reasonable care to protect . . . from an unreasonable risk of harm caused by a dangerous condition on the land." *Id*. But, unlike the somewhat ambiguous analysis in *Riddle* and *Bertrand*, the *Lugo* majority squarely situated the open and obvious danger doctrine in the element of duty, explaining that the doctrine "should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Id*.

Next, the *Lugo* majority explained that while a land possessor generally "is not required to protect an invitee from open and obvious dangers," if there are "special aspects of a condition [that] make even an open and obvious risk unreasonably dangerous," then the possessor "has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. at 517. The majority made two major moves with this analysis. First, it restricted the exceptions to the open and obvious danger doctrine to so-called "special aspects." Second, it clarified that whether these "special aspects" exist in any given case is a question

22

of duty. Therefore, under *Lugo*, § 343's rule, § 343A's "open and obvious" exception, and any exception to that exception all fall within duty, which is a question of law.

To define "special aspects," the majority looked to *Bertrand*. *Bertrand* involved plaintiffs injured on steps. The *Bertrand* majority had reasoned that while " 'the danger of tripping and falling on a step is generally open and obvious, . . . there may be *special aspects* of these particular steps that make the risk of harm unreasonable . . . .' " *Id*., quoting *Bertrand*, 449 Mich at 614 (emphasis in *Lugo*). *Lugo* universalized this idea of "special aspects" to apply in all premises-liability cases, not just cases about steps and stairs.

The *Lugo* majority then provided what it called "illustrations" of special aspects. First, it proposed that "a commercial building with only one exit for the general public where the floor is covered with standing water" would present a special aspect because "the open and obvious condition is effectively unavoidable." *Id*. at 518. Second, it suggested that "an unguarded thirty foot deep pit in the middle of a parking lot" would present a special aspect because, while open and obvious, "this situation would present such a substantial risk of death or severe injury . . . ." *Id*. While these illustrations appear to come from left field, the majority explained that it intended the approach to be "consistent with § 343A of the [Second] Restatement" because "there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition." *Id*. at 525.

Justice CAVANAGH, joined by Justice KELLY, concurred in the result but took issue with the majority's analysis in two respects. *Id*. at 527 (CAVANAGH, J., concurring). First,

23

he disagreed with the majority's conclusion that the open and obvious danger doctrine and any exceptions to it were part of duty. *Id*. at 531 ("In my view, § 343 and § 343A assume that a duty has been imposed by virtue of the possessor and invitee relationship, but that liability nonetheless can be limited under certain circumstances."); *id*. at 533 ("The open and obvious danger doctrine . . . relies on the standard of care."). Notably, Justice CAVANAGH—the author of the *Bertrand* majority—also criticized the majority for using *Bertrand* to support its conclusion that the open and obvious danger doctrine is a matter of duty. Rather, he explained: "I continue to believe that *Bertrand* correctly focused on liability and on breach." *Id*. at 539.

Second, he took issue with the majority's "special aspects" concept, which also drew from his own analysis in *Bertrand*. *Id*. at 541-542. *Bertrand*, he explained, "in no way implies that the possessor *only* has a duty to undertake reasonable precautions to protect his invitees when a condition has special aspects." *Id*. at 542. He believed that the special-aspects analysis presented an unnecessary departure from the Second Restatement's emphasis on anticipation.[8]

## 4. THE POST-*LUGO* ERA

This Court's jurisprudence following *Lugo* continued to be fractious. In part, it grappled with what some justices saw as an inherent tension between *Lugo*'s narrow

---

[8] Justice WEAVER also took issue with the majority's analysis. *Id*. at 544 (WEAVER, J., concurring in result). First, she questioned the concept of "severe harm" in the majority's special-aspects analysis, noting that the Court had never before "suggested . . . that the *degree* of potential harm is relevant to whether the risk of harm posed by a condition remains unreasonable despite its obviousness." *Id*. at 545. Second, she questioned the necessity of "unlikely hypothetical examples" in a case about an ordinary pothole. *Id*.

"special aspects" illustrations and the broader anticipation-of-harm standard contained in § 343A of the Second Restatement.

In *Hoffner v Lanctoe*, 492 Mich at 455, the Court addressed the "limited exception" for "effectively unavoidable" conditions. The plaintiff, a member of a gym, was walking into the gym's only entrance when she slipped and fell on an icy sidewalk. *Id*. at 456-457. The *Hoffner* majority explained that for the condition to be considered effectively unavoidable, it "must be unavoidable or inescapable *in effect* or *for all practical purposes*," meaning that the plaintiff "must be *required* or *compelled* to confront a dangerous hazard" and have no choice to avoid it. *Id*. at 468-469. Because the plaintiff "was not forced to confront the risk," the majority concluded that the open and obvious danger was not effectively unavoidable and the land possessor owed her no duty. *Id*. at 473.

The *Hoffner* majority, like the *Lugo* majority, argued that the special-aspects doctrine was entirely consistent with the Second Restatement. *Id*. at 479. But Justice CAVANAGH disagreed, characterizing the decision as "yet another unwarranted departure" from precedent relying on the Second Restatement. *Id*. at 483 (CAVANAGH, J., dissenting). He criticized the special-aspects doctrine both for failing to conform with § 343A's anticipation standard and for "narrowing . . . the traditional exceptions to the open-and-obvious doctrine by creating an illogical and unworkable standard." *Id*. at 488.

There also continued to be disagreement over which aspects of the analysis ought to be considered as part of duty or breach. In her dissent, Justice HATHAWAY added that because the special-aspects analysis was a part of duty, not breach, it "diminishes the role of juries in favor of judicial fact-finding, in direct contravention of the specific mandate of the Michigan Constitution." *Id*. at 495 (HATHAWAY, J., dissenting). She agreed with

25

Justice CAVANAGH that the Court had needlessly retreated from the Second Restatement by situating the open and obvious danger doctrine within duty and establishing the special-aspects exceptions. *Id.* at 498.

After *Hoffner*, the Third Restatement of Torts announced a radical new approach to premises liability. 2 Restatement Torts, 3d, § 51. Section 51 of the Third Restatement eliminated status-based categories and created one general duty of care owed to anyone who entered a land possessor's property. Section 51 states in full:

> Subject to § 52,[9] a land possessor owes a duty of reasonable care to entrants on the land with regard to:
>
> (a) conduct by the land possessor that creates risks to entrants on the land;
>
> (b) artificial conditions on the land that pose risks to entrants on the land;
>
> (c) natural conditions on the land that pose risks to entrants on the land; and
>
> (d) other risks to entrants on the land when any of the affirmative duties provided in Chapter 7 is applicable. [*Id.* at p 242.]

The commentary accompanying § 51 directly addressed the open and obvious danger doctrine, explaining that "the fact that a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed, but does not pretermit the land possessor's liability." 2 Restatement Torts, 3d, § 51, comment *k*, p 251.[10] In other

---

[9] Section 52 creates a separate duty for "flagrant trespassers" who enter a land possessor's property. 2 Restatement Torts, 3d, § 52, p 304.

[10] In particular, comment *k* accompanying § 51 of the Third Restatement provides helpful commentary on the issues presented here. Comment *k* directly addresses open and obvious dangers, explaining, as we have done here, the difference in treatment under the Second

words, the Third Restatement asserts that the question of whether a hazard was open and obvious is relevant to whether a duty was breached, not whether the defendant owed a duty to the injured party.

The Third Restatement changed several aspects of the older approach embodied in § 343 and § 343A of the Second Restatement. First, the status of the plaintiff as a trespasser, invitee, or licensee became immaterial; only if a plaintiff is a "flagrant trespasser" does their legal status change the duty owed. 2 Restatement Torts, 3d, § 52, p 304. Second, the duty owed to anyone formerly categorized as an invitee became broader. Rather than a duty only with respect to conditions that involve an "unreasonable risk of harm," the Third Restatement contemplated a duty that extended to any and all "risks." And while the Second Restatement carved out an exception to the "open and obvious" exception for scenarios in which the land possessor should "anticipate" harm, the Third Restatement contemplated no specific exception.

While some justices have suggested that the Court consider adopting the Third Restatement, because a majority has not yet embraced it, the Second Restatement approach remains the governing approach in Michigan. See *Livings*, 507 Mich at 360-361 (MCCORMACK, C.J., concurring) ("[P]erhaps it is time for this Court to consider the Third

Restatement and the Third Restatement given the corresponding shift from contributory negligence to comparative fault. Comment *k* explains that when an invitee encounters an open and obvious danger and "fails to exercise reasonable self-protective care," they are "contributorily negligent." 2 Restatement Torts, 3d, § 51, comment *k*, p 252. But "[b]ecause of comparative fault, . . . the issue of the defendant's duty and breach must be kept distinct from the question of the plaintiff's negligence." *Id*. Therefore, "[t]he rule that land possessors owe no duty with regard to open and obvious dangers sits more comfortably—if not entirely congruently—with the older rule of contributory negligence as a bar to recovery." *Id*.

27

Restatement's approach, which aligns more neatly with comparative negligence principles by imposing a blanket reasonable duty of care standard.").

Most recently, the Court addressed the special-aspects doctrine in *Livings*. The question before the Court was whether "a hazard one must confront to enter his or her place of employment should be considered effectively unavoidable." *Id*. at 333 (opinion of the Court). The majority concluded that the fact that an employee must confront a hazard to get to work can make the condition effectively unavoidable such that the land possessor owes a duty even if the condition is open and obvious. *Id*. In reaching this conclusion, the majority pointed to comment *f* accompanying the Second Restatement § 343A, which described a " 'slippery waxed stairway, whose condition is visible and quite obvious,' " that is the only way for an employee to enter an office. *Id*. at 340, quoting 2 Restatement Torts, 2d § 343A, comment *f*. According to the Second Restatement, under such a circumstance, "a possessor might expect a reasonable person to confront an obvious hazard," and therefore, the majority suggested, the possessor would owe the invitee a duty. *Id*. As the majority noted, the Court had long relied on the Restatement for guidance, and *Lugo* itself emphasized that "the special-aspects test was 'consistent with § 343A of the Restatement . . . .' " *Id*. at 344, quoting *Lugo*, 464 Mich at 525.

Not everyone agreed with the Court's continued endorsement of the special-aspects doctrine. See *id*. at 350 (MCCORMACK, C.J., concurring) ("I write separately . . . to express my reservations about the continued reliance on the judicially created special aspects doctrine."). Then Chief Justice MCCORMACK argued that while the special-aspects doctrine "may not appear to deviate in any important way from the Second Restatement approach[,] . . . the scheme it created has little basis in the language of the Restatement or

28

this Court's precedent."  *Id*. at 356-357.  Nor did everyone agree with reinvigorating the Second Restatement's comment *f* as a means of concluding that a special aspect existed. See *id*. at 361 (ZAHRA, J., dissenting) ("Rather than adopting the Restatement illustration, I would apply this Court's well-established open and obvious danger jurisprudence . . . ."); *Id*. at 384 (CLEMENT, J., dissenting) ("Whatever the faults of this duty-based open and obvious danger analysis in premises-liability actions, it appears to me to at least have the benefit of greater clarity and ease of application than the Second Restatement.").

Which brings us to today, when we conclude that *Lugo*, which established our current framework for addressing a land possessor's duty of care, was wrongly decided in several respects and must be overruled.

## IV.  ANALYSIS

### A.  STARE DECISIS

Reaching the conclusion that *Lugo* must be overruled requires an analysis of whether it was wrongly decided, "whether [it] defies 'practical workability,' whether reliance interests would work an undue hardship, and whether changes in the law or facts no longer justify the questioned decision."  *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000).

First, we conclude *Lugo* was wrongly decided in two respects.  First, the *Lugo* Court erred by situating the open and obvious danger doctrine and any exceptions to it in duty. Before *Lugo*, there was ambiguity as to whether all or some of the analysis under § 343 and § 343A of the Second Restatement fell under the umbrella of duty or breach.  See *Livings*, 507 Mich at 381 (CLEMENT, J., dissenting) ("The basic confusion . . . is this: if a premises owner faces no liability *whatsoever* for injuries caused by at least some obvious

hazards, what aspect of a premises-liability action does the obviousness of such a hazard relate to—duty or breach?"). While *Lugo* certainly provided clarity, it failed to grapple with how situating the open and obvious danger doctrine and its exceptions in duty—rather than breach—would operate in practice. In particular, it failed to account for the inherent tension with Michigan's clear policy of comparative fault.

Duty is a threshold question of law for the court to decide before a case can get to a jury. *In re Certified Question*, 479 Mich at 504. Therefore, where there is no duty owed to a particular plaintiff, the case is dismissed and the plaintiff does not proceed to trial, let alone recover damages for any injuries sustained. Michigan is a comparative-fault jurisdiction, meaning that it is the policy of our state that when a plaintiff is at fault, it does *not* bar recovery, but rather reduces the amount of damages they can recover by their percentage of fault. MCL 600.2959. It is of course true that technically, duty and comparative fault are two separate elements of a premises-liability claim. See *Riddle*, 440 Mich at 95-96. But functionally, by situating the open and obvious danger doctrine in duty, the plaintiff's comparative fault has become an integral part of the duty analysis. Practically, what this means is that a plaintiff's fault works to cut off liability in full, directly against the policy of this state.

The test for whether a danger is open and obvious asks "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 641. The test is designed to be "an *objective standard*" that looks only to the " 'objective nature of the condition of the premises at issue.' " *Id*., quoting *Lugo*, 464 Mich at 523-524. But in practice, courts frequently rely on the plaintiff's own negligence as a reason to find that a condition was open and obvious.

For example, courts often point to the plaintiff's testimony about their knowledge of a particular danger and their failure to avoid it to conclude that the danger was open and obvious.[11] Or courts will conclude that a danger is open and obvious even if a plaintiff did not see it, because had they been looking (i.e., not negligent), they would have known to avoid it.[12] Put differently, and contrary to the dissent's assertions, by placing the "open and obvious" inquiry in the duty analysis, courts look primarily at the plaintiff's actions, instead of the defendant's duty to take reasonable care. Improperly muddling the plaintiff's

_____

[11] See, e.g., *Hoffner*, 492 Mich at 473 ("Plaintiff freely admits that she knew that the ice posed a danger, but that she saw the danger as surmountable . . . ."); *Joyce v Rubin*, 249 Mich App 231, 239-240; 642 NW2d 360 ("[The plaintiff] stated that she watched where she walked on the sidewalk and walked very carefully because she knew the sidewalk was 'not very safe.' . . . Thus, subjectively and objectively, no reasonable juror could have concluded that . . . the danger . . . was not open and obvious."); *Finazzo v Fire Equip Co*, 323 Mich App 620, 626; 918 NW2d 200 (2018) ("[P]laintiff was indeed warned of the cable; he could see it, and he could have easily avoided it by simply stepping over it."); *Trueblood Estate v P&G Apartments, LLC*, 327 Mich App 275, 287; 933 NW2d 732 ("Indeed, plaintiff acknowledged that it had snowed the night before and testified that he was wearing winter clothing and winter boots when he left his apartment, showing that he was well aware of the wintry conditions outside."); *Davidson v Steve's Family Dining II, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 2, 2023 (Docket No. 361730), p 3 ("Plaintiff admitted . . . that she was aware that the floor was wet before she walked across it.").

[12] See, e.g., *Pinsky*, unpub op at 3 ("The evidence indicates that [the plaintiff] would not have been injured had she been looking at her path through the checkout lane . . . ."); *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 713-714; 737 NW2d 179 (2007) ("[P]laintiff testified that after he slipped, 'I could see the grapes [on the floor].' . . . Plaintiff's own deposition testimony establishes that he would have noticed the potentially hazardous condition had he been paying attention."); *Ward v Misty Farm, LLC*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 358544), p 4 ("[The plaintiff] testified that she could have '[p]ossibly' seen the crack at issue had she been looking at the floor when she walked."); *Saban v Henry Ford Health Sys*, unpublished per curiam opinion of the Court of Appeals, issued April 30, 2020 (Docket No. 347844), p 6 ("Plaintiff admitted that he would have seen the defect— from his position in the wheelchair—if he had been looking at his path of travel.").

fault with the defendant's duty has largely eliminated the duty of a land possessor to take the required reasonable care.

To reiterate: the open and obvious danger doctrine is objective. We have said so many times. But the problem is that courts, including us, routinely say one thing (it's objective) and do another (look to the plaintiff's subjective response). *Lugo* itself provides an example of this. The *Lugo* majority went out of its way to criticize the trial court for finding that the danger was open and obvious because "the plaintiff 'was walking along without paying proper attention to the circumstances where she was walking,' " explaining that the court should have focused on the objective nature of the condition. *Lugo*, 464 Mich at 523. But in reaching its own conclusion that the pothole was open and obvious, the *Lugo* majority noted the plaintiff's deposition testimony that she " 'wasn't looking down' " and concluded that she tripped on the pothole because she "failed to notice it." *Id*. at 521-522. It's hard to parse the difference between these two analyses, given that both refer to the plaintiff's own fault in causing the injury.

Situating the "open and obvious" analysis in duty, therefore, poses two problems. First, it puts the judge—not the jury—in charge of deciding an issue that functionally includes an analysis of the plaintiff's negligence. But under MCL 600.2957, "the liability of each person shall be allocated . . . by *the trier of fact* . . . ." (Emphasis added.) Because the plaintiff's own potential liability so often factors into the "open and obvious" analysis, the court, not the jury, is analyzing the plaintiff's liability, in direct contravention of MCL 600.2957. Second, because duty is a threshold requirement that must be met before a case can proceed, the plaintiff's own liability functions as an absolute bar to recovery. In practice, "open and obvious" cases wind up looking much like they did in the era of

32

contributory negligence, when a plaintiff's contribution to the injury—such as their own failure to avoid or to notice an obvious danger—served as an absolute bar to recovery.

Second, *Lugo* was also wrongly decided in announcing the special-aspects doctrine. At the outset, we note that the relationship between the § 343A of the Second Restatement's anticipation-of-harm standard and the Court's own special-aspects standard has been subject to considerable debate. Since *Lugo* first announced the special-aspects test, a majority of this Court has maintained that it is consistent with § 343A of the Second Restatement. See *Lugo*, 464 Mich at 525; *Hoffner*, 492 Mich at 478-480; *Livings*, 507 Mich at 340. But not everyone has agreed.[13]

It well may be that the intention behind *Lugo*'s special-aspects test was to provide just two examples of scenarios in which "the possessor should anticipate harm from a known or obvious danger . . . ." 2 Restatement Torts, 2d, § 343A, p 218. The *Lugo* Court may have intended the concepts of "effectively unavoidable" conditions and conditions posing "a substantial risk of death or severe injury" to be two illustrations of a broader class of scenarios in which harm should be anticipated. But regardless of intention, the special-aspects test most often does not work this way in practice. Instead, courts frequently ask whether an open and obvious danger either (1) is effectively unavoidable,

---

[13] See *Lugo*, 464 Mich at 527 (CAVANAGH, J., concurring); *id*. at 544-545 (WEAVER, J., concurring); *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 336; 683 NW2d 573 (2004) (CAVANAGH, J., concurring in part and dissenting in part); *Hoffner*, 492 Mich at 483 (CAVANAGH, J., dissenting); *id*. at 494-495 (HATHAWAY, J., dissenting); *Livings*, 507 Mich at 350 (MCCORMACK, C.J., concurring); *id*. at 369 (ZAHRA, J., dissenting). We have also managed to confuse the lower courts. See, e.g., *Bragan ex rel Bragan v Symanzik*, 263 Mich App 324, 331; 687 NW2d 881 (describing *Lugo* as "replac[ing]" the Restatement approach with the special-aspects analysis).

or (2) poses a substantial risk of death or severe injury.[14] If neither special aspect is present, the inquiry is over; the danger is open and obvious, and the land possessor owes no duty.[15]

Moreover, the illustrations provided in *Lugo*—the standing water in front of a single entrance and the 30-foot-deep pit—have become litmus tests for recovery. If the open and obvious danger does not resemble these scenarios, courts commonly conclude that the land possessor owes no duty.[16] Then again, in a small subset of cases, courts *have* treated *Lugo*'s special aspects as mere illustrations of the broader category of scenarios in which a land possessor should anticipate the harm.[17] The incongruity in how *Lugo* is applied generates unfairness, with some courts interpreting special aspects much more narrowly than others.

[14] The dissent states that the *Lugo* majority identified one of the special aspects as "those in which the danger is unreasonable . . . ." But this is not what *Lugo* said, and it is not how it has subsequently been applied. Rather, *Lugo* defined a special aspect as one in which the danger "present[s] . . . a substantial risk of death or severe injury." *Lugo*, 464 Mich at 518. There is significant daylight between dangers that are unreasonable and those that present a substantial risk of death or severe injury.

[15] See, e.g., *Pinsky*, unpub op at 4; *Robertson v Blue Water Oil Co*, 268 Mich App 588, 593; 708 NW2d 749; *Finazzo*, 323 Mich App at 627; *Cox v America Multi-Cinema, Inc*, unpublished per curiam opinion of the Court of Appeals, issued November 10, 2022 (Docket No. 357588), p 3.

[16] See, e.g., *Livings*, 507 Mich at 358 (MCCORMACK, C.J., concurring) ("Not surprisingly, since *Lugo*, 30-foot pits and standing water traps became the barometer for lower courts applying the special aspects doctrine."); *Moyer v Sieloff*, unpublished per curiam opinion of the Court of Appeals, issued June 30, 2009 (Docket No. 285587), p 2 ("Slipping and falling on ice, even from a porch, does not present the same risk of death or injury as falling into a 30-foot deep pit."); *Bredow v Land & Co*, 307 Mich App 579, 594; 862 NW2d 232 (2015) (WHITBECK, J., concurring) ("The Supreme Court's hypothetical 30-foot-deep pit is not even remotely similar to the situation we have here."), vacated in part on other grounds 498 Mich 890 (2015).

[17] See, e.g., *Kenny v Kaatz Funeral Home, Inc*, 264 Mich App 99, 112; 689 NW2d 737 (2004), rev'd 472 Mich 929 (2005) ("There is no indication in *Lugo* that the examples or illustrations of special aspects provided in the opinion reflect the only situations where

This Court's own decisions applying *Lugo* have unfortunately not provided additional clarity on the special-aspects doctrine. In *Hoffner*, the Court narrowed the "effectively unavoidable" special aspect only to scenarios in which a person is "*required* or *compelled* to confront a dangerous hazard" and has no choice to avoid it. *Hoffner*, 492 Mich at 469. While the *Hoffner* majority argued that the decision was consistent with the Second Restatement, its interpretation of "effectively unavoidable" conditions as those that a plaintiff had *no choice* but to encounter does not appear anywhere in the Second Restatement—not even in the accompanying comments and illustrations. In fact, one illustration suggests that even if a plaintiff technically has a choice to confront an open and obvious danger, but the alternative path is inconvenient, then the defendant would still be "subject to liability." See 2 Restatement Torts, 2d, § 343A, comment *g*, illustration 8, p 222 (describing an open and obvious snow-and-ice-covered footbridge from a railcar where the only other approach requires a detour of six blocks as generating liability for the defendant). Therefore, *Hoffner* claimed to be consistent with the Second Restatement, but it was considerably narrower in terms of which scenarios it would exempt from the open and obvious danger doctrine.

Then, in *Livings*, the Court directly quoted an illustration from the Second Restatement to explain that a danger could become effectively unavoidable if an employee had to confront it to enter their workplace for work purposes. *Livings*, 507 Mich at 340.

---

special aspects can arise."); *O'Donnell v Garasic*, 259 Mich App 569, 576; 676 NW2d 213 (2003) (treating the unique features of the sleeping loft from which the plaintiff fell as "special aspects," even though they did not fit the rigid categories from *Lugo*).

These decisions create a sense of whiplash: in one, the Second Restatement appears to be a background consideration at best; in the other, it is front and center.

Moreover, *Lugo*, *Hoffner*, and *Livings* all cited the plaintiff's own choices to explain why "special aspects" were or were not present. And yet, all three claimed that the special-aspects doctrine centered only on the nature of the condition itself. Case in point, under *Hoffner* and *Livings*, assuming hypothetically that a gym had a single, ice-covered entrance, the "condition" would be transformed into an "effectively unavoidable" condition that would subject the defendant to liability only when an employee of the gym, rather than a patron, approached. This is a far cry from the stability that *Lugo* intended. See *Livings*, 507 Mich at 364-365 (ZAHRA, J., dissenting); *Lugo*, 464 Mich at 525-526 ("[W]e believe that our approach, focusing on the existence or absence of special aspects of an open and obvious danger, will [better] guide the trial courts in considering whether particular open and obvious conditions posed an unreasonable risk of harm . . . .").

In sum, we conclude that *Lugo* was wrongly decided because, by concluding that the open and obvious danger doctrine and any exceptions to it are a part of the duty analysis, it runs afoul of Michigan's commitment to comparative fault. And by announcing the special-aspects test, *Lugo* created confusion as to what the exceptions to the open and obvious danger doctrine would be. While the doctrine may have been intended simply to illustrate the broader anticipation standard, it has not functioned that way in practice.

Next, we conclude that *Lugo* defies practical workability. A decision defies practical workability when it generates confusion among courts trying to apply it and sows division. See *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 585-586; 702 NW2d 539 (2005). *Lugo* itself was a divided decision; the justices disagreed with respect to both

central holdings.[18]  Tellingly, the author of the decision on which the special-aspects doctrine purported to rely—*Bertrand*—disagreed with the majority's characterization of his own analysis.[19]  Since *Lugo* was decided, jurists on this Court and the Court of Appeals have repeatedly called it into question.[20]  Court of Appeals panels frequently disagree over how to apply *Lugo*,[21] and this Court has at times stepped in to reverse their work.[22]

---

[18] *Lugo*, 464 Mich at 527 (CAVANAGH, J., concurring) ("I write separately to express my disagreement with the majority's 'special aspects' analysis."); *id*. at 531 ("The second imperative point to understand about Restatement §§ 343 and 343A is that they refer to the imposition of liability; they do not discuss whether a duty exists."); *id*. at 544 (WEAVER, J., concurring) (calling the special-aspects doctrine into question).

[19] *Lugo*, 464 Mich at 542 (CAVANAGH, J., concurring) ("[T]he quoted language [from *Bertrand*] in no way implies that [a] possessor *only* has a duty to undertake reasonable precautions to protect his invitees when a condition has special aspects.").

[20] See, e.g., *Dorsey v Taubman Auburn Hills Assoc*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2017 (Docket No. 330690) (GLEICHER, J., concurring) (highlighting the tension between Michigan's "open and obvious" jurisprudence and comparative fault); *Branch v D & S Prop Mgt, LLC*, unpublished per curiam opinion of the Court of Appeals, issued December 26, 2019 (Docket No. 345882) (GLEICHER, J., concurring in part and dissenting in part), p 5 ("[T]he "effectively unavoidable" doctrine contradicts bedrock tort principles, and should be jettisoned for that reason."); *Mann*, 470 Mich at 336 (CAVANAGH, J., concurring in part and dissenting in part); *Hoffner*, 492 Mich at 483 (CAVANAGH, J., dissenting); *Hoffner*, 492 Mich at 494-495 (HATHAWAY, J., dissenting); *Livings*, 507 Mich at 350 (MCCORMACK, C.J., concurring).

[21] See, e.g., *Barrett v Discount Tire & Battery*, unpublished per curiam opinion of the Court of Appeals, issued August 26, 2004 (Docket No. 250213) (SCHUETTE, J., dissenting), pp 1-2 (calling the majority's interpretation of *Lugo*'s "open and obvious" analysis into question); *Young v Walton Oil, Inc*, unpublished per curiam opinion of the Court of Appeals, issued February 6, 2018 (Docket No. 333794) (MURRAY, P.J., dissenting), p 4 (highlighting disagreement about *Lugo*'s application to wintry conditions).

[22] See, e.g., *Kenny*, 264 Mich App 99, rev'd 472 Mich 929.  This Court has also been divided over when the Court of Appeals has erred in its application of *Lugo*.  See, e.g., *Galliher v Trinity Health-Mich*, 480 Mich 1072, 1072 (2008) (MARKMAN, J., dissenting) ("Because I cannot imagine any more 'open and obvious' condition than a pothole in a

37

Notably, this Court has even been divided over whether and when *Lugo* and its progeny need clarification.[23]  *Lugo* defies practical workability because it has generated considerable confusion and division.

Next, we must consider whether reliance on *Lugo* makes it unwise to overrule it. "As to the reliance interest, the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations." *Robinson*, 462 Mich at 466.  Where overruling a decision would "produce chaos," the Court should not do so.  *Id*. at 466 n 26.  *Lugo* has been on the books for a long time—more than 20 years.  Practitioners and courts alike have relied on it in thousands of premises-liability cases.  But given the uncertainty and division it has generated in our caselaw, it cannot be said to be "so accepted" and "so fundamental" as to create "real-world dislocations" if changed.  *Id*. at 466.  The sheer number of appellate decisions applying *Lugo*, clarifying *Lugo*, and adjusting *Lugo* shows that it did not create enough stability to generate a reliance interest strong enough to keep us from reconsidering it today.  We therefore disagree with

---

driveway during daylight hours, I would reverse the Court of Appeals judgment . . . ."); *Schooley v Consol Roadhouse of Taylor, LLC*, 488 Mich App 981, 982 (2010) (MARKMAN, J., dissenting) ("I continue to believe that an ordinary toilet paper dispenser does not constitute a 'dangerous condition' causing 'an unreasonable risk of harm' on a business premises.").

[23] See, e.g., *Lymon v Freedland*, 501 Mich 933, 933 (2017) (MARKMAN, C.J., dissenting) (explaining that he would have granted leave to appeal to "provide greater clarity concerning the circumstances in which an 'open and obvious' condition contains a 'special aspect' "); *Wiater v Great Lakes Recovery Centers, Inc*, 477 Mich 896, 896 (2006) (WEAVER, J., dissenting) (explaining that she would have granted leave to ask whether *Mann*, 470 Mich 320, a decision applying *Lugo*, was correctly decided).

the dissent that retaining *Lugo* will avoid litigation. Instead, overruling it ends two decades of uncertainty and arguments, where parties and lower courts have had to navigate an unclear standard and varying applications.

Finally, there are no changes in the law or facts that either weigh for or against overruling *Lugo*. But we do note that part of the problem with *Lugo*, of course, was its own failure to account for a significant change in the law that predated it—the shift to a comparative-fault regime. Overall, we conclude that *Lugo* should be overruled. It was wrongly decided and has generated a whole host of practical-workability problems. While it has been on the books for more than two decades, it has not created reliance interests strong enough to cut against a decision to overrule it.

## B. THE NEW (AND NOT-SO-NEW) FRAMEWORK FOR PREMISES LIABILITY

Today, we begin by reiterating that several aspects of our existing premises-liability jurisprudence remain viable in Michigan. First, we reaffirm the traditional duty owed to invitees: the "duty to exercise reasonable care to protect [them] from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams*, 429 Mich at 499. We also hold that the three traditional status-based categories—licensee, invitee, and trespasser—remain, reserving the question of whether to adopt the Third Restatement's blanket reasonable-care standard for a later time.

The open and obvious nature of a condition remains a relevant inquiry in a premises-liability case. However, to the extent prior cases have held that it should be analyzed as a part of a land possessor's duty, those cases are overruled. Rather, the open and obvious nature of a danger—i.e., whether it is "reasonable to expect that an average person with

39

ordinary intelligence would have discovered it upon casual inspection," *Hoffner*, 492 Mich at 461—is relevant to the defendant's breach and the plaintiff's comparative fault. Contrary to the dissent's repeated, erroneous assertions that our decision somehow eliminates or dispenses with the open and obvious danger doctrine, we are simply moving the doctrine from duty to breach where it legally should lie. And we find support for the shift from duty to breach in several places.

First, the change finds support from caselaw and statutory law articulating Michigan's shift from contributory negligence to comparative fault. See *Placek*, 405 Mich at 650; MCL 600.2957. Because an "open and obvious" analysis frequently includes an analysis of the plaintiff's own behavior—a failure to see a danger, appreciate a danger, or avoid a danger—situating the doctrine in the breach/comparative-fault analysis will allow the plaintiff's potentially negligent response to an open and obvious danger to reduce their damages, rather than cut off all recovery. The Legislature made clear when it enacted MCL 600.2957 nearly 30 years ago that it intended the jury to allocate the "liability of each person" in all tort actions. MCL 600.2957(1). To be clear: the standard for assessing whether a danger is open and obvious is, and remains, objective. But in practice, the plaintiff's own account of their response to the danger is a key piece of evidence used by courts to determine whether, objectively, a danger was open and obvious. And this makes good sense. An actual person's response to a danger, in most cases, will be relevant to what a reasonable person might perceive about a danger.[24]

---

[24] While MCL 600.2957 provides support for shifting the open and obvious danger doctrine from duty to breach, we do not argue, as the dissent suggests, that the statute somehow "abrogated" earlier caselaw holding otherwise. Given our decision that *Lugo* was wrongly

Second, the shift finds support in the Third Restatement. See 2 Restatement Torts, Third, § 51, comment *k*, p 251. While we decline to adopt the Third Restatement in its entirety today,[25] we find its commentary useful in reaching our conclusion that the open and obvious danger doctrine belongs in breach, not duty. Unlike the First and Second Restatements, which were drafted during the bygone era of contributory negligence, the Third Restatement has a background of comparative fault in mind. With respect to open and obvious dangers, the Third Restatement explains that "[t]he rule that land possessors owe no duty with regard to open and obvious dangers sits more comfortably—if not entirely congruently—with the older rule of contributory negligence as a bar to recovery." 2 Restatement Torts, 3d, § 51, comment *k*, p 252. Therefore, the Third Restatement recognizes that "the fact that a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed, but it does not pretermit the land possessor's liability." *Id*. at p 251. We agree.

---

decided and must be overruled, the task before us today is to articulate the appropriate legal framework for courts to employ when an invitee is harmed by a condition on a land possessor's property. In announcing the framework today, our state's commitment to comparative fault—as articulated by both caselaw and statutory law—serves as helpful guidance in aligning our framework with the clear goal of our Legislature to ensure that a plaintiff's own fault does not serve as an absolute bar to recovery in tort litigation.

[25] Contrary to the dissent's assertion, there is certainly "daylight" between the Third Restatement and the framework we adopt today. Most glaringly, we do not adopt a blanket "duty of reasonable care." Instead, we retain the decades-old duty that land possessors take reasonable care to protect only against *unreasonable* risks of harm caused by *dangerous* conditions of the land. *Williams*, 429 Mich at 499. Unlike under *Lugo*, however, liability is not limited to those dangers that present a substantial risk of death or serious injury or dangers that are effectively unavoidable.

41

Third, shifting the open and obvious danger doctrine to breach will effectuate the very same policy goals undergirding this Court's premises-liability decisions spanning before and after *Lugo*. In *Hoffner*, 492 Mich at 459, this Court articulated two key principles of Michigan premises law: "First, landowners must act in a reasonable manner to guard against harms that threaten the safety and security of those who enter their land. Second, . . . landowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land." The Court explained that these two principles had been used to establish the well-recognized rules that govern the rights and duties of both landowners and those who enter their land, stating:

> Underlying all these principles and rules is the requirement that both the possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitees' obligation to assume personal responsibility to protect themselves from apparent dangers. [*Hoffner*, 492 Mich at 459-460 (citations omitted).]

See also *Bradley v Burdick Hotel Co*, 306 Mich 600, 604; 11 NW2d 257 (1943).

We agree with the notion that "landowners are not insurers" and that "both the possessors of land and those who come onto it" must "exercise common sense and prudent judgment when confronting hazards on the land." *Hoffner*, 492 Mich at 459. The problem with our current framework, however, is that the analysis of each party's common sense is imbalanced; while the invitee's own negligence can cut off liability in full, the land possessor's cannot. By shifting the open and obvious danger doctrine to breach, it will allow the jury to do just what this Court—and the Legislature—intend: conduct a comparative analysis of each party's fault.

42

Next, we hold that the special-aspects doctrine is overruled to the extent that it departed from the anticipation-of-harm standard in § 343A of the Second Restatement.[26] Rather than conduct a narrow analysis of whether an obvious danger is "effectively unavoidable" or poses an "unreasonable risk of severe harm," the fact-finder should consider whether "the possessor should anticipate the harm despite such . . . obviousness." 2 Restatement Torts, 2d, § 343A, p 218. While we reiterate the viability of the anticipation exception today, as articulated in the Second Restatement, we make clear that whether a land possessor should anticipate harm from an otherwise open and obvious danger is a relevant inquiry under *breach*, not duty.[27]

To summarize, a land possessor owes a "duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams*, 429 Mich at 499. If the plaintiff establishes that the land possessor owed plaintiff

---

[26] In the dissent's view, the special-aspects test in its current form is entirely consistent with the Second Restatement's anticipation standard, but this, as we have explained, is inaccurate. The dissent's "proper approach," therefore, would require changing the law, not merely following it as it is.

[27] Likewise, the dissent overstates the impact of this opinion on the question of foreseeability. By reaffirming the traditional duty owed to an invitee, we also reaffirm that all the factors used to assess duty remain relevant: "(1) foreseeability of the harm, (2) degree of certainty of injury, (3) closeness of connection between the conduct and injury, (4) moral blame attached to the conduct, (5) policy of preventing future harm, and (6) the burdens and consequences of imposing a duty and the resulting liability for breach." *Rowland*, 509 Mich 992. Therefore, foreseeability is still a relevant inquiry; i.e., if it is foreseeable for an invitee to confront a hazard on the land, despite its open and obvious nature, a landowner may owe a duty. Indeed, if a hazard is open and obvious, it should be *more* foreseeable for a defendant to notice the hazard, anticipate the danger it would cause to an invitee, and exercise reasonable care to remove or repair the danger.

43

a duty, the next step in the inquiry is whether there was a breach of that duty.[28] Our decision does not alter the standard of reasonable care owed to an invitee, meaning that it's not necessary for land possessors to heed the dissent's advice to "immediately . . . rectif[y]" hazards on their property to avoid liability. Rather, as has always been true, a land possessor need only exercise *reasonable* care under the circumstances. As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee. If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly. A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it.

## V. APPLICATION

### A. *KANDIL-ELSAYED v F & E OIL, INC*

We hold that under the framework announced today, questions of material fact remain as to whether the defendant breached its duty. Therefore, the decision granting summary disposition to the defendant is reversed, and the case is remanded for further proceedings. Here, the central facts presented to the court, which are not in dispute, revealed that the plaintiff had stopped for gas on a snowy day and walked across snow-and-ice-covered ground to pay inside. She slipped and fell on the snow. At the time of the

---

[28] Whether a duty is breached will generally require consideration of various factual questions properly resolved by a jury. However, if there are no genuine issues of material fact remaining, a court may properly grant summary disposition under MCR 2.116(C)(10).

accident, the roads were still snow-covered, although the plaintiff could not recall when it had started snowing or whether the snow had stopped.

It is undisputed that the plaintiff was an invitee, and therefore the defendant owed "a duty to exercise reasonable care to protect [her] from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams*, 429 Mich at 499. Long before *Lugo*, this Court held that a land possessor owes a duty "to use reasonable care to protect against hazards arising from natural accumulation of ice and snow." *Quinlivan*, 395 Mich at 248. The *Quinlivan* Court applied the same general duty standard we employ today to the specific condition of ice and snow, explaining that such a duty "will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of the injury to the invitee." *Id*. at 261. Applying *Quinlivan*, we hold that the defendant owed a duty to the plaintiff to take reasonable care to protect against the hazards of the natural accumulation of ice and snow on the property.[29]

Next, we must ask whether the defendant breached the duty owed to the plaintiff. We conclude that questions of fact remain as to whether the defendant's failure to address the ice and snow in the parking lot was reasonable. The factual record does not make clear when it began snowing or whether it had stopped snowing when the plaintiff was injured. Indeed, under *Lugo*, such factual development would have been futile where the open and obvious danger doctrine eliminated the land possessor's duty. Therefore, it is impossible to know at this stage whether the defendant took "reasonable measures . . . within a

---

[29] The dissent suggests that "[a]fter (or perhaps even during) every snowstorm, property owners and possessors must now find a way to shovel, salt, and clear their properties of snow and ice" or be subject to civil liability. Only a distorted reading of this opinion could support such a conclusion.

45

reasonable time after an accumulation of ice and snow" to reduce the hazard. *Id*. In addition, questions of fact remain whether the ice and snow were open and obvious, i.e., "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection," *Hoffner*, 492 Mich at 461, and if so, whether the defendant should have anticipated that an invitee would be harmed by the condition.

If this case proceeds to trial and a jury concluded that the defendant breached its duty, the jury may reduce the plaintiff's damages if it concludes that the danger was open and obvious and the plaintiff's decision to confront it was negligent. Here, the plaintiff's own testimony about her clear ability to see the snow is relevant, as is the fact that she stated it was well lit at the time. The prevalence of wintry conditions in Michigan more generally is also relevant.

Because several questions of fact remain, we conclude there is insufficient evidence before us to decide whether the defendant breached its duty as a matter of law. Therefore, we reverse the judgment of the Court of Appeals and remand the case to the trial court for further proceedings.

## B. *PINSKY v KROGER CO OF MICH*

Like in *Kandil-Elsayed*, we hold that questions of fact remain as to whether the defendant breached its duty to the plaintiff. Therefore, we reverse the judgment of the Court of Appeals and remand for further proceedings. The evidence presented shows that the plaintiff, while walking through a grocery store checkout lane toward the store's aisles, tripped over a thin cable and fell. The cable was strung between an adjoining, closed checkout lane and a two-tier metal display basket with a large poster fastened to the top.

46

The parties disputed how low the cable was strung at the time of the accident. The plaintiff testified that she saw the basket, but not the cable, and that just before she tripped, she was "looking ahead into the store."

Just as in *Kandil-Elsayed*, it is undisputed that the plaintiff was an invitee and that the defendant therefore owed her a "duty to exercise reasonable care to protect [her] from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams*, 429 Mich at 499. We have previously held that an obstruction in a checkout lane, like the two-tier basket here, constitutes a dangerous condition. See *Clark v Kmart Corp*, 465 Mich 416, 417; 634 NW2d 347 (2001) (holding that "several loose grapes . . . scattered on the floor" of a checkout lane constituted a dangerous condition). Here, viewing the evidence in a light most favorable to the plaintiffs, we conclude that the defendant owed a duty to protect the plaintiff from the unreasonable risk of harm caused by a dangerous obstruction in the checkout lane.

Next, we must decide whether the defendant breached its duty. We conclude that because questions of fact remain as to breach, summary disposition is unwarranted at this time. The evidence presented at this stage in the proceedings does not establish how low the cable was strung at the time of the accident. The height of the cable is relevant to whether it was open and obvious—i.e., whether "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Hoffner*, 492 Mich at 461. A thin white cable strung at ankle height would be much less visible to an "average person with ordinary intelligence" than, say, a cable strung at waist height. Indeed, given the dissent's significantly different interpretation of the factual record here, it is clear that reasonable minds could differ as to whether this hazard was

47

open and obvious. Moreover, choosing to block off a checkout lane with a thin cable placed low may present a situation in which the defendant should have "anticipate[d] the harm" despite the open and obvious nature of the cable. Therefore, questions of fact remain regarding whether the defendant breached its duty to guard against dangerous conditions on the land that pose an unreasonable risk of harm to invitees. Accordingly, we reverse the decision granting summary disposition to the defendant and remand for further proceedings.[30]

## VI. CONCLUSION

We conclude that *Lugo* was wrongly decided and must be overruled. We hold, in accordance with decades of precedent prior to *Lugo*, that a land possessor owes "a duty to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Williams*, 429 Mich at 499. *Lugo*'s holding that the open and obvious danger doctrine is relevant to the defendant's duty is overruled. While the open and obvious nature of a condition, assessed by asking whether "it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon causal inspection," remains relevant, it is a question of breach and comparative fault, not duty. *Hoffner*, 492 Mich at 461. Lastly, the special-aspects doctrine is overruled to the extent it is inconsistent with the Second Restatement's anticipation standard. We hold that instead, when assessing whether a defendant has breached their duty to take reasonable

---

[30] Similarly to *Kandil-Elsayed*, if this case proceeded to trial, a jury that found the defendant liable could also reduce any awarded damages if it found that the plaintiff was comparatively at fault. Part of this inquiry would also necessarily involve consideration of the open and obvious nature of the condition and the plaintiff's choice to confront it.

care to protect invitees from an open and obvious danger, courts should ask whether the possessor "should anticipate the harm."  2 Restatement Torts, 2d, § 343A.

Although we conclude that the defendants in both *Kandil-Elsayed* and *Pinsky* owed a duty to the respective injured plaintiffs, there are genuine issues of fact remaining that are relevant to whether the defendants breached that duty and if so, whether the plaintiffs were comparatively at fault and should have their damages reduced.  Therefore, we reverse the judgment of the Court of Appeals in both cases and remand for further proceedings. We do not retain jurisdiction.

Elizabeth T. Clement
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

# STATE OF MICHIGAN

## SUPREME COURT

AHLAM KANDIL-ELSAYED,

        Plaintiff-Appellant,

v

        No. 162907

F & E OIL, INC.,

        Defendant-Appellee.

_____

RENEE PINSKY and DAVID PINSKY,

        Plaintiffs-Appellants,

v

        No. 163430

KROGER CO. OF MICHIGAN,

        Defendant-Appellee.

_____

BERNSTEIN, J. (*concurring*).

I concur fully with the majority opinion but write separately to highlight a complication in this state's premises-liability jurisprudence that I believe merits future scrutiny—how the open and obvious danger test ought to apply to disabled communities, particularly those who have vision impairments.

To start, I concur in today's holding that a premises-liability cause of action employs an *objective* standard to determine whether a danger is open and obvious. That is to say, the inquiry considers the condition of the land. I also recognize that previous courts have often misconstrued this test by considering a plaintiff's subjective response to the land.

However, it goes without saying that certain conditions of the land that may be appreciated by a reasonably prudent person may not be appreciated by a reasonably prudent *blind*—or otherwise disabled—person.  In my judgment, a flaw of the reasonably prudent person standard, as it has developed in our state's jurisprudence, is that it suggests that a "reasonably prudent person" must be someone without vision impairments.  See, e.g., *Garrett v WS Butterfield Theatres*, 261 Mich 262, 263-264; 246 NW 57 (1933) (holding that "[d]ifferent floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons.  The construction is not negligent unless, by its character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect a step *or see it*") (emphasis added); *Bertrand v Alan Ford, Inc*, 449 Mich 606, 616; 537 NW2d 185 (1995) (explaining that "because steps are the type of everyday occurrence that people encounter, under most circumstances, a reasonably prudent person will *look* where he is going, will *observe* the steps, and will take appropriate care for his own safety") (emphasis added).

However, in the instance of disability, I believe that the objective characteristics of a plaintiff are both relevant and fair to consider in addition to the condition of the land.  Yet this Court has never fully explored how the open and obvious danger doctrine should be applied to people with disabilities.  See *Sidorowicz v Chicken Shack, Inc*, 469 Mich 912 (2003) (CAVANAGH, J., dissenting) ("[W]hat is open and obvious to the sighted is *not necessarily open and obvious to the blind . . . .*  Leave should be granted to explore how this Court's explanation of the open and obvious doctrine in *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 692 NW2d 384 (2001), relates to those with disabilities.").  Instead, we have previously explained that premises-liability actions have *not* allowed the fact-finder

2

to consider a plaintiff's objective characteristics. *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 329; 683 NW2d 573 (2004) (in holding that a visibly intoxicated person is held to the same standard of reasonable conduct as a sober person, this Court explained that "in a premises liability action, the fact-finder must consider the condition of the premises, not the condition of the plaintiff") (quotation marks and citation omitted). In the absence of clear direction from this Court, several unpublished Court of Appeals decisions have concluded that a plaintiff's disabilities do not alter the open and obvious danger analysis. See *Sidorowicz v Chicken Shack, Inc*, unpublished per curiam opinion of the Court of Appeals, issued January 17, 2003 (Docket No. 239627), p 3 (holding that a plaintiff's blindness was irrelevant to the application of the open and obvious danger doctrine); *Cox v America Multi-Cinema, Inc*, unpublished per curiam opinion of the Court of Appeals, issued November 10, 2022 (Docket No. 357588), p 7 (recognizing the plaintiffs' "claim that [the invitee] did not see the steps because of her vision issues, not because they could not be seen by an average person of ordinary intelligence," and concluding that "[a]lthough [the invitee's] subjective characteristics may well have impaired her ability to see the steps, the law is clear that openness and obviousness is to be determined by reference to an objective standard, and the trial court was not at liberty to disregard that standard"). As such, this state's caselaw has placed disabled people at a disadvantage compared to their nondisabled counterparts. See *Bragan v Symanzik*, 263 Mich App 324, 333; 687 NW2d 881 (2004) ("Taken to its logical conclusion, the cases that followed *Lugo* disallowed liability to individuals laden with . . . physical disabilities[.]").[1]

---

[1] In contrast to our approach, some of our sister states have recognized that vision impairments are properly considered under an open and obvious danger analysis. For instance, Louisiana has recognized that "a completely blind man cannot be held to the

It is no secret that Michigan's premises-liability jurisprudence has been unnecessarily complicated for far too long. For this reason, it has been quite challenging for courts to engage with the many specific and significant questions that arise from this doctrine. Today, this Court attempts to steer our premises-liability jurisprudence onto a straighter path. However, I remain skeptical that this opinion will place all plaintiffs on an equal playing field. I believe that a jurisprudentially significant question exists as to whether a plaintiff's disability is a relevant factor in an open and obvious danger analysis. My hope is that, as this Court continues to shift premises-liability jurisprudence to more equitable grounds, we soon take up this salient question and provide clarity for the litigants of our state.

Richard H. Bernstein

---

'open and obvious' legal concept because he is completely blind and can neither see nor discern an open and obvious hazard." *Hams v Boh Bros Constr Co*, *LLC*, 322 So 3d 397, 403-404; 2020-0248 (La App 4 Cir 5/26/21) (citation and quotation marks omitted). The Supreme Court of Montana has recognized that "blindness is one of the facts which the jury must consider in determining whether [a plaintiff] acted with the care which a reasonably prudent person would ordinarily exercise when burdened with such an infirmity." *Gohn v Butte Hotel Co*, 88 Mont 599, 610; 295 P 262 (1931). The court also held that "[w]hile a blind person must take his infirmity into consideration when moving about and must do more," the duty to use greater care is mutual between the premises owner and the invitee. *Id*. at 611 (citation omitted). Delaware courts have also recognized that "what is an open and obvious condition to a blind person depends upon what, if any, tools or aids the blind person utilizes to discover the condition, and the degree to which such aids are used." *Coker v McDonald's Corp*, 537 A2d 549, 551 (Del Super, 1987). The foregoing cases endorse a commonsense concept—visual impairments necessarily alter the open and obvious danger analysis.

4

AHLAM KANDIL-ELSAYED,

      Plaintiff-Appellant,

v                                      No. 162907

F & E OIL, INC.,

      Defendant-Appellee.

---

RENEE PINSKY and DAVID PINSKY,

      Plaintiffs-Appellants,

v                                      No. 163430

KROGER CO. OF MICHIGAN,

      Defendant-Appellee.

---

ZAHRA, J. (*dissenting*).

I join Justice VIVIANO's dissenting opinion, particularly his conclusion that Restatement Torts, 2d, § 343A constitutes "the appropriate standard" for analyzing the duty element of a negligence action based on premises liability and that "the 'special aspects' test" to determine whether a danger that is open and obvious nevertheless gives rise to a duty "is simply an application of the Restatement." I write to clarify that this Court is not *required* to adopt any aspect of any version of the Restatement of Torts. The American Law Institute's Restatements of the Law were originally secondary sources of law that were merely intended to summarize particular areas of the common law. More recently,

however, the American Law Institute has departed from simply providing compilations of the law and instead advocates for changes in the law.[1] In fact, it has been said that the American Law Institute

> is no longer merely restating the common law. Rather it is promulgating and advocating for legal dogmas that exist well outside of the legal mainstream, or where there is a lack of clear consensus in state courts. In a growing number of cases, the [American Law Institute] is purporting to "restate" law that has never been clearly stated in the first place.[2]

To be clear, although this Court has never adopted the Second Restatement of Torts in full,[3] this Court has historically looked to the Second Restatement to provide context to the common law of torts in Michigan. But this Court's decision to afford some deference to the Second Restatement in our premises-liability law, while not required, is understandable, because that Restatement is more in line with a traditional treatise in that it constitutes a compilation and survey of then-existing law that could be considered by state courts in the interpretation of their common law. In contrast, the Third Restatement at times resembles an essay on where its authors think the law should be heading.[4] Unlike

---

[1] See American Tort Reform Association, *From Legal Scholarship to Legal Advocacy: The Evolving Role of the American Law Institute in State Court Jurisprudence* (April 28, 2022), available at <https://www.atra.org/white_paper/from-legal-scholarship-to-legal-advocacy-the-evolving-role-of-the-american-law-institute-in-state-court-jurisprudence> (accessed July 24, 2023).

[2] *Id*. at 3.

[3] See *Hoffner v Lanctoe*, 492 Mich 450, 478-479; 821 NW2d 88 (2012) ("[T]his Court has never adopted wholesale the Restatement approach. While this Court has looked to the Restatement for guidance, it is our caselaw, as developed through the years, that provides the rule of law for this State.").

[4] See *From Legal Scholarship to Legal Advocacy*, pp 3-5; FindLaw, *The 3rd Restatement of Torts—Shaping the Future of Products Liability Law* (last reviewed May 26, 2016) <https://corporate.findlaw.com/litigation-disputes/the-3rd-restatement-of-torts-shaping-

the majority opinion, I would give no deference to the Third Restatement because we, the justices of the Michigan Supreme Court, decide the future of Michigan common law, not the group of law professors enlisted by the American Law Institute, most of whom have no ties to Michigan and are unaccountable to the people of Michigan. Indeed, we must never forget that it is the constitutional duty and obligation of this Court to determine the common law of this state.[5] And we are charged with effectuating the public-policy choices and social mores of Michiganders when we expound on our common law.[6]

As I noted in *Livings Estate v Sage's Investment Group, LLC*,[7] there is plainly tension between our caselaw and portions of the Second Restatement, particularly with some of the Restatement illustrations. Still, it is undeniable that our common-law open and obvious danger doctrine has at its foundation §§ 343 and 343A of the Second

---

the-future-of-products.html> (accessed July 22, 2023); *post* at 28 n 15 (VIVIANO, J., dissenting).

[5] As this Court explained in *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 258; 828 NW2d 660 (2013), " '[t]his Court is the principal steward of Michigan's common law, and it is 'axiomatic that our courts have the constitutional authority to change the common law in the proper case[.]' " (Citations omitted.)

[6] "The common law is always a work in progress and typically develops incrementally, i.e., gradually evolving as individual disputes are decided and existing common-law rules are considered and sometimes adapted to current needs in light of changing times and circumstances." *Id*. at 243. "[A]lteration of the common law should be approached cautiously with the fullest consideration of public policy and should not occur through sudden departure from longstanding legal rules." *Id*. at 259. A prudential principle guiding our common-law jurisprudence is the attempt to "avoid capricious departures from bedrock legal rules as such tectonic shifts might produce unforeseen and undesirable consequences." *Id*. (quotation marks and citations omitted).

[7] *Livings Estate v Sage's Investment Group, LLC*, 507 Mich 328, 369; 968 NW2d 397 (2021) (ZAHRA, J., dissenting).

3

Restatement. Rather than radically alter Michigan's common law by rejecting decades of this Court's premises-liability jurisprudence like the majority opinion does, Justice VIVIANO reasonably reconciles our caselaw with those portions of the Restatement on which we relied. That is, the special-aspects exception from the general rule that open and obvious dangers do not give rise to liability, which this Court set forth in *Lugo v Ameritech Corp, Inc*,[8] can be understood as consistent with § 343A of the Second Restatement in that even an open and obvious condition remains unreasonable, and thus a special aspect, where "the possessor should anticipate the harm"[9] from that condition despite its obviousness. The "unreasonably dangerous" and "effectively unavoidable" components of our special-aspects exception are best understood as two examples of where harm should be anticipated despite the open and obvious nature of a condition, although they are not necessarily the sole examples of such special aspects. This interpretation, while faithful to our caselaw and seemingly consistent with the intent of this Court in developing the special-aspects exception, also helps to alleviate concern that the open and obvious danger doctrine has been applied too narrowly.[10]

Moreover, this interpretation constitutes the exact type of cautious clarification that is required of this Court in shaping our common law. A majority of this Court acts abruptly

---

[8] *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 514; 629 NW2d 384 (2001).

[9] Second Restatement, § 343A(1), p 218.

[10] Lower courts have frequently applied the "30-foot pit" and "standing water" illustrations of a special aspect that this Court set forth in *Lugo*, 464 Mich at 518-520. While those illustrations were surely intended to represent examples of a special aspect, I doubt that the Court in *Lugo* intended that courts would simply compare the pertinent condition on the land to a 30-foot pit in deciding whether it possesses a special aspect, which is how the exception has at times been applied.

4

rather than incrementally and cautiously in discarding the Second Restatement test. Worse, notably absent from the majority opinion is any explanation that whatever portion of the Third Restatement adopted by the Court today is consistent with the mores and policies of Michigan, such that it should be adopted. Justice VIVIANO appropriately highlights the likely undesirable consequences that will result from the majority opinion's "tectonic shift" in our premises-liability law.[11]

For these same reasons, the majority's stare decisis analysis is unpersuasive. The majority opinion engages in a self-serving application of the *Robinson v Detroit*[12] stare decisis factors, piling together citations of dissenting opinions to demonstrate that the law has not been workable. This is folly. By characterizing the open and obvious danger doctrine as part of the duty element, precluding liability where the disputed condition is open and obvious and lacking a special aspect, *Lugo* and *Hoffner v Lanctoe*[13] have set forth a rule that is predictable and exceedingly workable. And it is a framework that has undoubtedly been relied on by property owners for decades. A majority of this Court simply does not like the current Second Restatement test, but that is not a sufficient basis to toss aside decades of precedent. "[W]hen it comes to alteration of the common law, the traditional rule must prevail absent compelling reasons for change. This approach ensures

---

[11] *Price*, 493 Mich at 259 (quotation marks and citations omitted).

[12] *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000).

[13] *Hoffner*, 492 Mich 450.

continuity and stability in the law."[14]  The majority has failed to provide compelling reasons for such a dramatic change in our premises-liability law.

I also write separately to emphasize that, even under this Second Restatement approach, our open and obvious danger doctrine, including the special-aspects exception, should remain focused on the objective nature of the condition of the land.  As I stated in *Livings*, "in applying the special-aspects doctrine, this Court has consistently and narrowly focused on the objective characteristics of the condition on the premises itself, not on the characteristics and considerations unique to the particular plaintiff encountering that condition."[15]  This is the proper focus because "[t]he nature of a readily observable condition does not change on the basis of a plaintiff's personal obligations or responsibilities[.]"[16]  To ensure predictability in the law, it is important that a property owner need only assess "the potential harms of an open and obvious risk from a single

---

[14] *Price*, 493 Mich at 260.

[15] *Livings*, 507 Mich at 364.  See *Lugo*, 464 Mich at 523-524 ("[I]t is important for courts in deciding summary disposition motions by premises possessors in 'open and obvious' cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff."); *Hoffner*, 492 Mich at 471 ("[A]n invitee's subjective need or desire" to enter a premises does not "affect[] an invitee's choice whether to confront an obvious hazard.  To conclude otherwise would impermissibly shift the focus from an objective examination of the *premises* to an examination of the subjective beliefs of the *invitee*."); *Perkoviq v Delcor Homes–Lake Shore Pointe Ltd*, 466 Mich 11, 19-20; 643 NW2d 212 (2002) ("In short, plaintiff has presented no evidence that *the condition of the roof was unreasonably dangerous* for purposes of premises liability.  The mere presence of ice, snow, or frost on a sloped rooftop generally does not create an unreasonably dangerous condition.") (emphasis added); *Mann v Shusteric Enterprises*, 470 Mich 320, 329; 683 NW2d 573 (2004), quoting *Lugo*, 464 Mich at 518 n 2 ("[I]n a premises liability action, the fact-finder must consider the 'condition of the premises,' not the condition of the plaintiff.").

[16] *Livings*, 507 Mich at 364.

objective standard, focused on the condition of the premises itself rather than from a potentially limitless number of standards defined by the individual circumstances and inclinations of every Michigan citizen."[17]

I disagreed with the Court's adoption of the specific illustration at issue in *Livings*,[18] because that illustration "is concerned with an individual plaintiff's ability or desire to avoid a dangerous condition" rather than the characteristics of the supposed dangerous condition itself.[19] For the same reasons, I would decline to adopt any other portion of the Second Restatement that likewise focuses on the subjective characteristics of the person encountering a condition on the land. But the clarification of the special-aspects exception set forth by Justice VIVIANO does not require the consideration of subjective characteristics

---

[17] *Id*. at 365.

[18] *Livings* narrowly held that "an open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes." *Livings*, 507 Mich at 333. In so holding, a majority of this Court adopted Illustration 5 to comment *f* of § 343A of the Second Restatement. Comment *f* explains that a reasonable person might be expected to confront an obvious hazard when "the advantages of doing so would outweigh the apparent risk," Second Restatement, p 220, and Illustration 5 to that comment states as follows:

> A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C. [2 Restatement Torts, 2d, § 343A, comment *f*, illustration 5, p 221.]

Contrary to the majority opinion's suggestion, I simply dissented from the Court's application of this illustration in *Livings*. I did not reject *any* reliance on § 343A of the Second Restatement.

[19] *Livings*, 507 Mich at 370.

7

personal to a particular plaintiff. Indeed, he appropriately notes that, unlike the contributory-negligence defense, "[a]t issue is 'the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it.' "[20] In my view, in applying § 343A of the Second Restatement, the inquiry should continue to be whether a premises possessor should reasonably anticipate harm based on the objective characteristics of a known or obvious danger rather than whether harm should be anticipated based on some characteristic unique to a particular plaintiff.

In sum, I agree with Justice VIVIANO's interpretation of our longstanding special-aspects exception. I would continue to focus on the objective nature of the pertinent condition on the premises when applying the open and obvious danger doctrine and its special-aspects exception. Moreover, the majority opinion fails to persuasively show why jurisprudential principles of stare decisis should be ignored and decades of caselaw disregarded. I fully echo Justice VIVIANO's concerns that the majority opinion's dismantling of our duty requirement will expand liability and destabilize our negligence law. For these reasons, I dissent.

Brian K. Zahra

---

[20] *Post* at 19 (VIVIANO, J., dissenting) (citation omitted).

8

STATE OF MICHIGAN

SUPREME COURT

AHLAM KANDIL-ELSAYED,

      Plaintiff-Appellant,

v                                       No. 162907

F & E OIL, INC.,

      Defendant-Appellee.

_____

RENEE PINSKY and DAVID PINSKY,

      Plaintiffs-Appellants,

v                                       No. 163430

KROGER CO. OF MICHIGAN,

      Defendant-Appellee.

_____

VIVIANO, J. (*dissenting*).

The majority's unprecedented decision sweeps away a commonsense rule that has served Michiganders since the nineteenth century. The open and obvious doctrine is premised on the straightforward notion that, as a general rule, those who possess real property need not rectify hazards on their property that are easy for others to see and avoid, such as plainly visible snow or ice. Given the nature of such conditions, it was rightly thought that those who enter the property of another would detect obvious hazards and avoid them if possible. After today, however, all those who possess real property in Michigan can no longer rely on this commonsense notion. Instead, obvious hazards on the

land—including snow and ice—must immediately be rectified by property possessors or they will be subject to civil liability. After (or perhaps even during) every snowstorm, property owners and possessors must now find a way to shovel, salt, and clear their properties of snow and ice, lest they be sued by individuals who choose to confront these clearly dangerous conditions.

This transformation of our premises liability law practically does away with any meaningful conception of duty, a core element in these cases and in negligence actions more generally. And the majority does this by relying on flawed rationales, including an incomplete and mistaken reading of our caselaw. I would instead confirm what we have said time and again: §§ 343 and 343A of the Second Restatement of Torts establish the test for our open and obvious doctrine. While our recent caselaw discusses special aspects as exceptions to the general "no duty" rule for open and obvious hazards, the special aspects are best understood as examples of this general standard from the Second Restatement. Under that standard—or nearly any reasonable standard—plaintiffs in the present cases would lose. It is only by the majority's fundamental recasting of our premises liability law that life could be breathed into these otherwise moribund cases. For these reasons, I strongly dissent.

## I. DUTY

These cases involve the first and perhaps most fundamental element of a negligence action: a duty owed by the defendant to the plaintiff. Without such a duty, even negligent conduct cannot give rise to liability. See *Clark v Dalman*, 379 Mich 251, 260-261; 150 NW2d 755 (1967) ("Actionable negligence presupposes the existence of a legal

relationship between parties by which the injured party is owed a duty by the other, and such duty must be imposed by law."); Esper & Keating, *Abusing "Duty"*, 79 S Cal L Rev 265, 265-266 (2006) ("As the first element of a plaintiff's case[,] . . . duty seems to stand out even among the elements of the prima facie case. If a plaintiff cannot establish that the defendant was under a duty to exercise at least some care to ensure that its actions did not impose an unreasonable risk of injury on the plaintiff, then we need not ask" about any of the other elements.). Therefore, to succeed on a negligence claim, including one based on premises liability, "plaintiffs must establish that defendants owed them a duty of care. . . . The duty element represents the legal obligation that arises from the relationship between the parties." *Livings Estate v Sage's Investment Group, LLC*, 507 Mich 328, 337; 968 NW2d 397 (2021). Generally, however, more than a relationship is necessary to impose a duty—courts must consider various factors, including "the relationship of the parties, the foreseeability of the harm, the burden that would be imposed on the defendant, and the nature of the risk presented." *In re Certified Question from the Fourteenth Dist Court of Appeals of Texas*, 479 Mich 498, 508; 740 NW2d 206 (2007). We have, in fact, said that the harm must be foreseeable in order for a duty to be found. *Id*. at 507-508.

In so holding, we followed at least a century's worth of precedent, including the principles set forth in the seminal case of *Palsgraf v Long Island R Co*, 248 NY 339; 162 NE 99 (1928). There, railroad employees jostled a passenger while trying to help him board a moving train, causing him to drop his unmarked package, which contained fireworks. *Id*. at 340-341. The fireworks exploded, causing a scale to tip over onto the plaintiff, who was about 10 feet away on the platform. *Id*. at 341. Writing for the majority, then Chief Judge Cardozo concluded that the defendant railroad company owed no duty to

3

the plaintiff because any harm to the plaintiff resulting from negligence the employees might have committed toward the boarding passenger was unforeseeable. *Id*. at 344-345 ("The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension . . . ."). In other words, the scope of the duty was limited to foreseeable harms.

This has been blackletter law across the country at least since *Palsgraf*, if not before. See Cardi, *The Hidden Legacy of* Palsgraf*: Modern Duty Law in a Microcosm*, 91 BU L Rev 1873, 1884 (2011) (noting that out of the 43 jurisdictions with a multifactor duty test like ours, only five appear not to consider foreseeability, while the rest do and "often cite[] [foreseeability] as the most important factor in duty"); see also 2 Restatement Torts, 2d, § 281, comment *c*, pp 4-5 ("In order for the actor to be negligent with respect to the other, his conduct must create a recognizable risk of harm to the other individually, or to a class of persons. . . ."); *id*., comment *g*, p 7 ("In determining whether a particular harm or hazard is within the scope of the risk created by the actor's conduct, 'risk' must be understood in the broader sense of including all of those hazards and consequences which are to be regarded as normal and ordinary.").

## II. OPEN AND OBVIOUS DANGERS

In this context, the open and obvious doctrine fits nicely, as it reflects the general lack of any foreseeable risks of harm from open and obvious hazards. To invitees such as plaintiffs here, we have determined that "a possessor of land owes a duty to exercise reasonable care to protect invitees from dangerous conditions on the land." *Livings*, 507 Mich at 337. This duty has been based, in part, on the possessor's superior knowledge of

4

the property and potential defects. See 2 Premises Liability 3d (Sept 2022 ed), § 38:11; James, Jr., *Tort Liability of Occupiers of Land: Duties Owed to Licensees and Invitees*, 63 Yale L J 605, 627 n 130 (1954). But we have long held that "this duty does not extend to dangerous conditions that are open and obvious." *Livings*, 507 Mich at 337, citing *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95-96; 485 NW2d 676 (1992). This is the open and obvious doctrine.

A primary rationale for the doctrine is that the "the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them . . . ." *Riddle*, 440 Mich at 96. In other words, because the invitee should find the hazards, it is not foreseeable that he or she will be harmed by them.[1] In addition, when faced with an open or obvious danger, the defendant possessing the land is not generally in any better position to know of the hazard than is the plaintiff invitee. See *Kentucky River Med Ctr v McIntosh*, 319 SW3d 385, 390 (Ky, 2010) (noting the common view that there is no duty when a danger is open and obvious because "the basis for placing a duty on the land possessor—his superior knowledge—does not exist").

---

[1] See *Bruns v Centralia*, 2014 IL 116998, ¶ 19; 21 NE3d 684 (2014) ("Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty."); *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 524-525; 629 NW2d 384 (2001) (noting that our approach was consistent with the view that a possessor is liable for injuries resulting from open and obvious hazards only if the possessor should nevertheless " 'anticipate the harm' ") (citation omitted); *Ward v K Mart Corp*, 136 Ill 2d 132, 143-144; 554 NE2d 223 (1990) (noting that one of the "only sound explanation[s] for the 'open and obvious' rule must be . . . that the defendant in the exercise of reasonable care would not anticipate the plaintiff would fail to notice the condition, appreciate the risk, and avoid it"); 62 Am Jur 2d, Premises Liability, § 170, p 545 (explaining that courts find the obviousness of such hazards to be ample warning of their danger, thus relieving land possessors from "liability for failing to foresee or anticipate that such hazard will cause injury to someone").

5

## A. EARLY CASELAW AND THE RESTATEMENTS

Despite the open and obvious doctrine's clear doctrinal fit within our jurisprudence on the duty element, the majority suggests that the doctrine stemmed from the now-discarded rule of contributory negligence and that the doctrine only recently, and fitfully, came to be seen as part of the duty element. Under a contributory negligence regime, a plaintiff was barred from recovering if his or her own negligence contributed to the injury. See *Nezworski v Mazanec*, 301 Mich 43, 62; 2 NW2d 912 (1942). The majority essentially reasons, in part, that because the open and obvious doctrine can be thought of as relating to contributory negligence, and because both this Court and the Legislature have replaced that rule with a comparative negligence regime under which a plaintiff is not automatically barred from recovery by his or her negligence, it follows that the open and obvious doctrine must also be discarded.

The majority's characterization of the caselaw is incomplete at best. To be sure, in our very early caselaw the obviousness of a hazard was sometimes discussed in relation to the plaintiff's contributory negligence. For example, as the majority discusses, we held in *Goodman v Theatre Parking, Inc*, 286 Mich 80, 82-83; 281 NW 545 (1938), that the obviousness of the hazard leading to injury meant that the plaintiff was negligent in confronting it and that recovery was thus barred by contributory negligence. Sometimes we suggested that the obviousness of the danger meant that the defendant was not negligent, i.e., did not breach the relevant standard of care, in failing to warn a plaintiff of it. See, e.g., *Hollingshead v Detroit, GH & M R Co*, 181 Mich 547; 148 NW 171 (1914).

But we also often treated the obviousness of the hazard as applicable to the duty element—and to foreseeability in particular. In 1882, Justice COOLEY wrote for the Court

6

that "[e]very man who expressly or by implication invites others to come upon his premises . . . assumes to all who accept the invitation the duty to warn them of any danger in coming, which he knows of or ought to know of, and *of which they are not aware*." *Samuelson v Cleveland Iron Mining Co*, 49 Mich 164, 170; 13 NW 499 (1882) (emphasis added). In other words, the defendant's duty did not extend to hazards of which the invitee was aware.

Similarly, in *Batterson v Chicago & Grand Trunk R Co*, 53 Mich 125; 18 NW 584 (1884), we suggested the obviousness of a hazard related to the defendant's duty of care.[2] There, a railroad worker was injured when standing on unballasted railroad ties; he sued the railway and claimed that the injury would have been prevented if the track had been graded and ballasted. *Id*. at 126-127. We noted our earlier conclusion in the case "that such an open and obvious break in the surface of the ground could not be regarded as involving the same duty in an employer towards his men, as one which was known to him [i.e., the employer,] but not likely to be known to them." *Id*. at 127. We then stated that the plaintiff knew of the condition and should have expected the risk it posed. *Id*. at 129. Casting the case in terms of duty, we said that the defendant's duty to the plaintiff

> was not to see that he actually did know what the exact condition was at this point. They had a right to rest on the probability that any one would know what was generally to be seen by his own observation, or by information

---

[2] Discussions relevant to the open and obvious doctrine appear in various contexts outside what is now pure premises liability. Today, although the doctrine mostly arises in premises liability contexts, the obviousness of hazards is relevant in other areas of tort law as well. See, e.g., *Owens v Allis-Chalmers Corp*, 414 Mich 413; 326 NW2d 372 (1982) (addressing the open and obvious doctrine in the context of a products liability claim). Thus, early caselaw from outside the premises liability context helps illuminate the modern doctrine.

7

from those who were on the spot working with him, and who might fairly be expected to do their duty. [*Id*.]

A similar case is *Caniff v Blanchard Navigation Co*, 66 Mich 638, 639-640; 33 NW 744 (1887), in which a sailor sued a boat owner after falling through an open hatchway. We stated that "no negligence can be imputed to the defendant in leaving the hatch off from the hatchway" because the accident arose from the plaintiff's own carelessness. *Id*. at 644. In the dispositive portion of the opinion, however, we indicated that the case came down to the defendant's "duty." We repeated the rule from *Samuelson* that the defendant's duty did not extend to hazards of which the plaintiff was aware. *Id*. at 647. We then said that the rule establishing a duty in these circumstances "has no application to a case where a person who from his experience, through many years, in sailing a vessel, knows that it is customary to leave the hatchways of vessels open while lying in port, and whom observation teaches that they are liable to be open rather than closed, and are sources of danger which he must avoid at his peril." *Id*.; see also *Walker v Ginsburg*, 244 Mich 568, 569; 222 NW 192 (1928) ("That plaintiff might fall, and that the bar might slip were dangers so obvious that defendants had no duty to warn of them.").

Thus, while our early caselaw on obvious dangers sometimes referred to contributory negligence, it also relied on the concept of duty. In a similar manner, the First and Second Restatements of Torts left the basis for the open and obvious doctrine somewhat unclear. Neither specifically discussed the underlying theory of the doctrine, leaving courts to variously relate it to duty, contributory negligence, and even whether the defendant breached its duty. See 2 Restatement Torts, § 343;[3] 2 Restatement Torts, 2d,

---

[3] Section 343 of the First Restatement, pp 938-939, provides:

§ 343;[4] see generally Marks, *The Limit to Premises Liability for Harms Caused by 'Known or Obvious' Dangers: Will it Trip and Fall Over the Duty-Breach Framework Emerging*

A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

(c) invites or permits them to enter or remain upon the land without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility.

[4] Section 343 of the Second Restatement, pp 215-216, states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

Section 343A of the Second Restatement, p 218, specifically pertains to known or obvious dangers:

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

9

*in the Restatement (Third) of Torts?*, 38 Tex Tech L Rev 1, 27-28 (2005) ("Theories underlying the First Restatement's bright-line exemption for known or obvious dangers are varied, courts couching the invariable result, no liability, sometimes under the rubric of no duty, sometimes no breach, and sometimes under the old defense doctrines of contributory negligence or assumption of risk."); *Livings*, 507 Mich at 376-377, 381 (CLEMENT, J., dissenting) (noting that the Second Restatement did not answer the question whether the obviousness of a hazard related to the duty element or the breach element and appeared to be "structured around" the rule of contributory negligence).

Still, a leading treatise concluded that, historically, " '[u]nder the mainstream theory, . . . the obvious danger rule was not a matter of contributory negligence or assumed risk." *The Limit to Premises Liability*, 38 Tex Tech L Rev at 28, quoting Dobbs & Hayden, *Torts and Compensation: Personal Accountability and Social Responsibility for Injury* (2005), pp 362-363. " 'It was instead a no duty rule,' " created by the courts on " 'the theory . . . that if the danger was obvious, the invitee could avoid it and thus protect himself, so that the landowner would foresee no harm.' " *The Limit to Premises Liability*, 38 Tex Tech L Rev at 28, quoting Dobbs & Hayden, pp 362-363.[5]

---

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

As the majority explains, unlike the First Restatement, the Second Restatement allows for liability even for certain open and obvious dangers if the possessor could foresee that an invitee would nevertheless confront the hazard and be harmed.

[5] Although the treatise questioned this rationale, its historical analysis confirms that courts created the rule as a "no duty" rule.

Even to the extent there was some doctrinal confusion about the grounding of the doctrine, such confusion comes as no great surprise. In a contributory negligence regime, it did not much matter what the specific doctrinal rationale was: "[b]y any name, a bright-line rule of nonliability triggered by one finding of fact, knowledge or obviousness, essentially operates as . . . immunity . . . ." *The Limit to Premises Liability*, 38 Tex Tech L Rev at 28. There was no need for a court to specify the exact grounding of the doctrine because the underlying theories all resulted in dismissal.

Consequently, contrary to the majority's suggestion, the early caselaw does not uniformly support the assertion that the doctrine related to the contributory negligence defense. Instead, as discussed herein, a number of cases lend support for the conclusion that the open and obvious doctrine relates to the concept of duty.

## B. MORE RECENT CASELAW

The majority asserts that the more recent caselaw, applying the Second Restatement, "has not provided much clarity" as to whether the doctrine applies to the duty or the breach element. This is simply not true. Consider the prime case cited by the majority, *Quinlivan v Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244; 235 NW2d 732 (1975). The majority clutches onto dicta in the case while ignoring the actual holding and legal principles at issue. The case was a typical parking lot slip-and-fall action involving snow and ice. But rather than dealing with the open and obvious doctrine, it involved a related but separate principle known as the natural-accumulation-of-ice rule.

The basic rule was that snow and ice were not a defect in the property unless the possessor's conduct somehow made the condition worse. See *Hutchinson v Ypsilanti*, 103

11

Mich 12, 14; 61 NW 279 (1894) (M<small>C</small>G<small>RATH</small>, C.J., concurring); Comment, *Expansion of Landowner Liability through Rejection of the Natural Accumulation Rule*, 61 Iowa L Rev 1447, 1447 (1976). It was generally a bright-line rule, like that in the First Restatement, in cases involving natural accumulations of snow and ice. But it was not a perfect match for the open and obvious doctrine because it essentially represented a duty "to not increase these natural hazards or create a new hazard by any affirmative act . . . ." *Bard v Weathervane of Mich*, 51 Mich App 329, 331; 214 NW2d 709 (1974); *Weider v Goldsmith*, 353 Mich 339, 341; 91 NW2d 283 (1958) ("The *sine qua non* of this doctrine is that a new element of danger, not theretofore present, be introduced by the acts of the defendants."). Thus, the rule was not about the obviousness of the danger, as is the open and obvious doctrine, but simply focused on the *source* of the danger. See *Papadopoulous v Target Corp*, 457 Mass 368, 380; 930 NE2d 142 (2010) ("[T]he openness and obviousness of snow and ice have nothing to do with whether such accumulations are natural rather than unnatural . . . ."). And even to the extent the accumulation rule relates to the doctrine, it is significant that the rule was articulated as a matter of "duty" rather than as a matter of breach. See *Bard*, 51 Mich App at 331; see also *Selby v Conquistador Apartments, Ltd*, 990 P2d 491, 494 (Wy, 1999) ("The application of the natural accumulation rule relates to the threshold question of whether a duty exists on the part of the defendant.").

*Quinlivan* replaced this rule with the rule from the Second Restatement—which, as noted, allowed liability for certain open and obvious hazards if it was foreseeable that an invitee would confront them—via our adoption of an Alaska Supreme Court decision. *Quinlivan*, 395 Mich at 258-261, citing *Kremer v Carr's Food Ctr, Inc*, 462 P2d 747 (Alas,

12

1969).  We noted that *Kremer* adopted the Second Restatement's approach and quoted key

language from the opinion:

> "Section 343 is controlling here.  A jury could have found: (a) that
> Carr's possessed the parking lot and knew the condition of its surface, (b)
> that Carr's should have realized that this condition involved an unreasonable
> risk of harm to its business invitees, (c) that Carr's should have expected that
> its business invitees would not discover or realize the danger, or should have
> anticipated that they would fail to protect themselves against a danger they
> did discover or realize, or should otherwise have anticipated harm to invitees
> despite the fact that the danger was known or obvious to them, and (d) that
> Carr's failed to exercise reasonable care to protect business invitees, such as
> Kremer, from the dangerous surface conditions in its parking lot."
> [*Quinlivan*, 395 Mich at 259, quoting *Kremer*, 462 P2d at 759-750.]

Item (c) in the list reflects Restatement Second, § 343A, which, as noted, provides that an

open and obvious hazard will not lead to liability unless the possessor of land can

reasonably foresee that an invitee will confront the hazard.  Indeed, although we did not

mention it, *Kremer* quoted Restatement Second, § 343A in a footnote immediately after

Item (c).  *Kremer*, 462 P2d at 749 n 8.

The core holding of *Quinlivan*, then, was simply that some natural accumulations

of ice and snow could lead to liability under the Second Restatement test.  And in line with

the prior caselaw treating this as an issue of duty, we stated that "[i]n our view the Alaska

Court has appropriately conceived the legal duty owed by the invitor to the invitee."

*Quinlivan*, 395 Mich at 260.  We also said, "The general description of the duty owed

appearing in the Restatement is a helpful exposition of the duty described in" our past

caselaw.  *Id*. at 261.[6]  It is true that, in dicta, we suggested that "[t]he conduct of the invitee

---

[6] Somewhat strangely, despite endorsing the Restatement and its general open and obvious
rule, *Quinlivan* suggested that the possessor's duty required "reasonable measures be taken
within a reasonable time after an accumulation of ice and snow to diminish the hazard of

13

will often be relevant in the context of contributory negligence." *Id*. at 261. But we nowhere said that the obviousness of the danger was relevant to contributory negligence.[7] And again, because either a no-duty rule or a contributory negligence rule led to the same result, there was no need to specify the theoretical grounds for why the obviousness of the danger was relevant.

---

injury to the invitee." *Quinlivan*, 395 Mich at 261. The majority makes much of this line and suggests it directly applies here in *Pinsky v Kroger Co of Mich*. However, we do not appear to have seriously considered caselaw outside the context of the natural-accumulation rule, nor is it clear the parties even raised the issue of how the open and obvious doctrine applied in this context. Also, we offered no support or reasoning for the suggestion that, after some unspecified amount of time, the possessor must remove snow. To top it off, the Court subsequently narrowed *Quinlivan*, explaining that it "must be understood in light of this Court's subsequent decisions in *Bertrand* [*v Alan Ford, Inc*, 449 Mich 606; 537 NW2d 185 (1995)] and *Lugo*," which as discussed below, addressed the open and obvious doctrine. *Hoffner v Lanctoe*, 492 Mich 450, 464 n 24; 821 NW2d 88 (2012). When we have applied the doctrine to open and obvious accumulations of snow and ice, we have never suggested that a duty might exist if the accumulation persists long enough—rather, the Court has flatly deemed such conditions to be outside the scope of the possessor's duty. See *id*.

[7] The majority here also notes that the portion of *Kremer* we quoted in *Quinlivan* said that " '[a] *jury* could have found' " the listed items, including that the obvious hazard was foreseeable. *Quinlivan*, 395 Mich at 259 (citation omitted). From this, the majority reasons that we must have believed the obviousness of the harm was a question of fact for the jury and that, as such, it must relate to the breach element. This is because questions of duty traditionally are considered legal questions for the court. See *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988). It is a stretch, however, to claim that by endorsing an entire block quote we somehow opined on the relationship of the open and obvious doctrine—which was not even directly at issue—to the duty element. Moreover, as will be discussed more later, it is perfectly consistent to treat the issue of duty as sometimes becoming a question for the fact-finder—our present caselaw does just that. See *Bertrand*, 449 Mich at 617.

14

While the majority suggests *Quinlivan* was ambiguous as to the present issue, it is significant that courts have not struggled to understand it. Courts have, to the present, continued to cite *Quinlivan* to describe the duty element.[8]

## 1. COMPARATIVE NEGLIGENCE

The majority's treatment of two more central cases is worse still. In the lead-up to those cases, we continued to describe the open and obvious doctrine as applying to the duty element. See *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988) ("The duty a possessor of land owes his invitees is not absolute, however. It does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee may be expected to discover them himself."), citing, among other things, Restatement Torts, 2d, § 343A. Likewise, in the first of the two key cases, *Riddle*, 440 Mich at 93-94, we described *Quinlivan*, *Williams*, and the Second Restatement as applying to the duty element. Specifically, we noted that

---

[8] See, e.g., *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 567; 563 NW2d 241 (1997) (citing *Quinlivan* as pertaining to the duty owed by an invitor); *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 448; 751 NW2d 8 (2008) (CAVANAGH, J., dissenting) (describing *Quinlivan* as defining the duty owed); see, e.g., *Dep't of Civil Rights v Beznos Corp*, 421 Mich 110, 122 n 5; 365 NW2d 82 (1984) (citing *Quinlivan* as "discussing duties of landlords to those on their property"); *Merritt v Nickelson*, 407 Mich 544, 552-553; 287 NW2d 178 (1980) (citing *Quinlivan* as describing the duty element); see also *Mrozinski v Wal-Mart Stores, Inc*, unpublished per curiam opinion of the United States Court of Appeals for the Sixth Circuit, issued May 11, 2000 (Docket No. 99-1633); 215 F3d 1327 (Table); 2000 WL 659136, p 2 (citing *Quinlivan* as describing "the duty owed to a business invitee by a business owner"); *Wilkerson v Dayton Hudson Corp*, unpublished per curiam opinion of the United States Court of Appeals for the Sixth Circuit, issued July 17, 1997 (Docket No. 96-1708); 121 F3d 710 (Table); 1997 WL 413646, p 2 (citing *Quinlivan* as pertaining to duty); *Gresko v Southland Joint Venture*, 859 F Supp 1089, 1092 (ED Mich, 1994) (citing *Quinlivan* for the proposition that this Court "has adopted the definition of the duty owed by a premises owner to an invitee promulgated by the" Second Restatement).

15

*Williams* had discussed Second Restatement, § 343A and had, along with the other cases, "correctly define[d] the law regarding a premises owner's duty of care to invitees." *Riddle*, 440 Mich at 95. The majority suggests that "ambiguity and disagreement continued over which pieces of the § 343 and § 343A analysis were a part of duty or breach." This is misleading—the only disagreement or ambiguity cited by the majority is the fact that Justice LEVIN dissented. But a dissent does not mean the law was unsettled. The majority opinion in *Riddle* could not have been clearer that the Second Restatement and our caselaw on the open and obvious doctrine relate to the duty element.[9]

---

[9] The majority's description of what *Riddle* "*seemed* to describe" or "*suggests*" is confusing. (Emphasis added.) One need only quote the majority opinion, which includes the relevant lines from *Riddle*, to demonstrate how spurious those descriptors are:

> And it seemed to describe § 343A as also articulating the "duty" owed, despite its more ambiguous "not liable" language. [*Riddle*, 440 Mich] at 94 ("[W]e held that a possessor of land *does not owe a duty* to protect his invitees where conditions . . . are so obvious and apparent that an invitee may be expected to discover them himself.") (emphasis added). Therefore, *Riddle*'s recitation of the law suggests that the entirety of the analysis conducted under § 343 and § 343A is a question of duty. *Id*. [Second alteration in original.]

In a footnote, the majority also suggests that "the *Riddle* majority seems to agree that in practice, questions of the open and obvious nature of a particular danger, and the landowner's anticipation of harm, are questions of breach for the jury, even though they label § 343A as speaking to duty, not breach. [*Riddle*, 440 Mich] at 96-97." In full, the line from *Riddle* stated: "If the conditions are known or obvious to the invitee, the premises owner may nonetheless be required to exercise reasonable care . . . . What constitutes reasonable care under the circumstances must be determined from the facts of the case." *Id*. at 97 (citation omitted). This does not at all indicate that the open and obvious doctrine involves breach. Recall that under the Second Restatement, § 343A—which we had long since adopted by the time of *Riddle*—it remains possible for a duty of care to exist regarding an open and obvious hazard if the defendant should foresee that an invitee will choose to confront that hazard despite its obviousness. We referred to exactly that scenario in *Riddle*: "However, where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect

16

What makes *Riddle* even more significant is that we addressed and rejected the arguments adopted by the majority today concerning comparative negligence. The primary issue in *Riddle* was the effect upon the open and obvious doctrine of our adoption of comparative negligence in *Placek v Sterling Hts*, 405 Mich 638; 275 NW2d 511 (1979). That system, unlike contributory negligence, does not bar a plaintiff from recovering even if he was at fault—instead, the percentage of a plaintiff's fault generally reduces the defendant's liability.

In *Riddle*, we directly held that this change in law left the open and obvious doctrine in place. *Riddle*, 440 Mich at 95. In so holding, we simply described the fundamental principles that every first-year law student learns about the prima facie elements of negligence, in particular that duty and breach are separate elements, both of which must be established for the plaintiff to succeed. We noted that the open and obvious doctrine was "a defensive doctrine that attacks the duty element that a plaintiff must establish in a prima facie negligence case." *Id*. at 95-96. "Conversely, comparative negligence is an affirmative defense" that did not alter the defendant's initial duty. *Id*. at 98. Without a duty, there can be no negligence. *Id*. at 96. The reasoning is straightforward: negligence actions can succeed only if there is a duty; no duty exists if the hazard is open and obvious unless it is foreseeable the invitee will nevertheless confront the hazard; therefore, a

---

or warn the invitee *unless he should anticipate the harm despite knowledge of it on behalf of the invitee*." *Id*. at 96 (emphasis added). In those circumstances, a duty of care exists, and what is reasonable under the circumstances will of course depend on the facts of the case. This does not mean, however, that every instance of an open and obvious hazard pertains to the breach element.

17

negligence action must fail when the hazard is open and obvious unless the foreseeability exception is satisfied.

The fact that contributory negligence could no longer absolutely bar a plaintiff's recovery was irrelevant, we explained. *Id*. at 99, quoting *Ward v K Mart Corp*, 136 Ill 2d 132, 143-144; 554 NE2d 223 (1990). Although the obviousness of the hazard might affect the determination of whether a plaintiff was negligent, " 'the obviousness of a condition is also relevant to the existence of a duty on the part of defendant.' " *Riddle*, 440 Mich at 99, quoting *Ward*, 136 Ill 2d at 143. Whereas the adoption of comparative negligence might affect defenses available to the defendant, the concern here is " 'with the existence of a duty on the part of defendant in the first instance.' " *Riddle*, 440 Mich at 99, quoting *Ward*, 136 Ill 2d at 145. Relatedly, as the Supreme Court of Pennsylvania has observed, "[w]hereas duty is a question of whether any liability may attach to the defendant for the plaintiff's harm, comparative negligence is a method for determining how much responsibility should be allocated to the defendant in light of the plaintiff's conduct." *Krentz v Consol Rail Corp*, 589 Pa 576, 589; 910 A2d 20 (2006) (emphasis omitted).

*Ward* also explained that "the advent of comparative negligence did not affect the basic duty a defendant owes a plaintiff in negligence cases." *Ward*, 136 Ill 2d at 144; see also *Thompson v Stearns Chem Corp*, 345 NW2d 131, 134 (Iowa, 1984) ("Adoption of comparative negligence principles, while possibly mitigating the defense available to a tortfeasor, does not change [the] legal duty."). Nor does the viability of the open and obvious defense resurrect a contributory negligence defense: "The scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof. The focus must be on defendant. A major concern is whether *defendant* could reasonably have foreseen

18

injury to plaintiff." *Ward*, 136 Ill 2d at 148. This is how we have subsequently described the analysis. See *Livings*, 507 Mich at 346 ("[T]he overall analysis centers on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness.") (collecting cases). What is foreseeable will be determined by the objective nature of the conditions. Cf. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 523-524; 629 NW2d 384 (2001) ("[I]t is important for courts in deciding summary disposition motions by premises possessors in 'open and obvious' cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff."); *Livings*, 507 Mich at 363 (ZAHRA, J., dissenting) ("This Court has repeatedly maintained that application of the open and obvious danger doctrine . . . turns on the objective nature of the condition on the premises itself.").

The open and obvious doctrine thus has a different focus than the contributory negligence defense. At issue is "the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong v Best Buy Co, Inc*, 99 Ohio St 3d 79, 82; 788 NE2d 1088; 2003-Ohio-2573 (2003). "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.*[10]

---

[10] The different focuses of duty and contributory negligence can lead to different results. An invitee who is not negligent in confronting an obvious risk might nevertheless be barred by the open and obvious doctrine under a "no duty" rationale; by contrast, the contributory negligence defense would not bar recovery in those circumstances. Note, *Premises*

The majority also seems to assert that the legislative enactment of comparative negligence at least supports, if not requires, its holding today. Under MCL 600.2957(1), "[i]n an action based on tort . . . , the liability of each person shall be allocated under this section by the trier of fact . . . in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person . . . ." In MCL 600.2958, the Legislature made explicit that "a plaintiff's contributory fault does not bar that plaintiff's recovery of damages."

The majority points to nothing in these statutes that regulates the duty owed by land possessors, nor can I discern anything in the statutes that speaks to a land possessor's duty. One would expect that if the Legislature meant to abrogate a common-law principle like the open and obvious doctrine, it would have done so in a clearer manner. See *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010) ("The abrogative effect of a statutory scheme is a question of legislative intent, and 'legislative amendment of the common law is not lightly presumed.' Rather, the Legislature 'should speak in no uncertain terms' when it exercises its authority to modify the common law.") (citations omitted). Other courts have examined similar acts and concluded that they, too, leave the duty element untouched.[11] Moreover, although subsequent legislation is not always a good

---

*Liability: The Disappearance of the Open and Obvious Doctrine*, 64 Mo L Rev 1021, 1027-1028 (1999).

[11] See *Hale v Beckstead*, 116 P3d 263, 271; 2005 UT 24 (2005) ("The legislature did not abolish the open and obvious danger rule as found in the Restatement when it instituted a comparative negligence system of liability in Utah. Instead of acting as a bar to a plaintiff's recovery where the plaintiff invitee was injured on the defendant's property as a result of both parties' negligence, the rule simply defines the duty of care a possessor of land owes his invitees."); *Eiselein v K-Mart, Inc*, 868 P2d 893, 896 (Wy, 1994) ("The plain language of the statute cannot be read to impose new duties of care on prospective defendants. Since

tool for interpreting earlier statutes, see *People v Arnold*, 508 Mich 1, 14 n 26; 973 NW2d 36 (2021), it is also significant that the Legislature subsequently authorized municipalities to raise the open and obvious defense. MCL 691.1402a(5) ("In a civil action, a municipal corporation that has a duty to maintain a sidewalk under subsection (1) may assert, in addition to any other defense available to it, any defense available under the common law with respect to a premises liability claim, including, but not limited to, a defense that the condition was open and obvious."). Therefore, the comparative negligence statutes do not dictate the majority's holding today.[12]

## 2. WHO GETS TO DECIDE

The majority nevertheless emphasizes the Legislature's intent to have the fact-finder, rather than the judge, weigh fault. The majority suggests that courts, in practice, rely on evidence of the plaintiff's subjective actions and negligence when deciding whether a hazard was open and obvious. This is a problem, according to the majority, because

we presume the legislature enacts statutes with full knowledge of existing law and with reference to it, we must assume the legislature understood that there exists no duty to warn of or remove natural accumulations of ice and snow. Therefore, had the legislature intended to impose that duty upon prospective defendants, the legislature would have expressly provided for such a result in the statute. However, by adopting the comparative negligence statute, the Wyoming legislature simply instituted a fair system of apportionment of damages.").

[12] The majority makes the confusing claim that I do not grasp the significance of the state's "seismic shift" to comparative negligence. But regardless of how large or small one considers our state's change to a comparative negligence regime, our caselaw makes one thing very clear: it had no impact on the open and obvious doctrine. See *Riddle*, 440 Mich at 100. The only "seismic shift" I can perceive is the one wrought by today's majority opinion, which ignores the holding of *Riddle*, jettisons the open and obvious doctrine, and endeavors to create a new analysis for premises liability claims in our state—one that is undeveloped and unclear and that will spawn many decades of litigation to clarify the scope of the new obligations it imposes on landowners and possessors.

factual issues must be handled by the jury, whereas questions of duty relating to the open and obvious doctrine should be for the judge. In other words, situating the doctrine in the duty element deprives the plaintiff of the chance to have the case decided by a jury.

This is simply not so. Courts should not be considering a plaintiff's subjective actions and negligence rather than the objective nature of the condition itself. In any event, the majority cites numerous cases as evidence that courts consider a plaintiffs' negligence when applying the doctrine. But none of those cases actually describes the plaintiffs as negligent. See *ante* at 31 nn 11 & 12 (opinion of the Court). The courts were simply using the evidence at hand—largely from the plaintiffs—to describe the condition, including whether it was visible and whether it posed an appreciable danger. See, e.g., *Hoffner v Lanctoe*, 492 Mich 450, 473; 821 NW2d 88 (2012) ("Plaintiff freely admits that she knew the ice posed a danger, but that she saw the danger as surmountable . . . ."); *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 713, 714; 737 NW2d 179 (2007) ("[P]laintiff testified that after he slipped, 'I could see the grapes [on the floor]' . . . ." Indeed, "[p]laintiff's own deposition testimony establishes that he would have noticed the potentially hazardous condition had he been paying attention."). What else can a court use to determine the objective characteristics of the hazard if not the testimony and statements of those who saw it at the time of the accident?

More importantly, the majority is incorrect that the questions pertaining to the doctrine are always for the judge rather than the jury. We expressly held to the contrary in *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995). In that case, we reaffirmed *Riddle* and once again placed the doctrine within the duty element, defining it

based on the Second Restatement. [13] The majority largely ignores these repeated statements and instead misleadingly suggests we "continued to muddy the waters between duty and breach." It points to our statement that, "if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions. The issue then becomes the standard of care and is for the jury to decide." *Bertrand*, 449 Mich at 611. For support, we cited Second Restatement, § 343A, comment *f*, p 220, which noted that if a duty exists despite the obviousness of the danger, then questions of contributory negligence might arise. *Bertrand*, 449 Mich at 611-612.

The majority claims this muddies the waters. But once again, the majority entirely misunderstands the Second Restatement. To repeat: under the Second Restatement, a duty can exist despite the obviousness of the hazard when the defendant should anticipate that the invitee will nevertheless confront the hazard. As explained, that rule is the essential

---

[13] *Bertrand*, 449 Mich at 609 ("These two premises liability cases present the issue of the scope of the duty owed by an owner or occupier of land to its business invitees regarding steps on its premises."); *id*. ("The invitor's legal duty is 'to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land' that the landowner knows or should know the invitees will not discover, realize, or protect themselves against."), citing *Williams*, 429 Mich at 499; *Bertrand*, 449 Mich at 610-611 ("Where a condition is open and obvious, the scope of the possessor's duty may be limited. While there may be no obligation to warn of a fully obvious condition, the possessor still may have a duty to protect an invitee against foreseeably dangerous conditions. Thus, the open and obvious doctrine does not relieve the invitor of his general duty of reasonable care."); *id*. at 612-613 (discussing *Riddle* as pertaining to duty); *id*. at 614 (discussing *Quinlivan* as pertaining to duty); *id*. at 614-617 (discussing older caselaw regarding hazards on steps and concluding that they precluded imposing a duty on possessors of land to make the steps " 'foolproof' ").

function of Second Restatement, § 343A, which retreated from the harder line in the First Restatement.  Indeed, the comment we quoted from in *Bertrand* explains as much:

> "There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.  In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection.  This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.  Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.  In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. . . .  It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances."  [*Bertrand*, 449 Mich at 611-612 (emphasis omitted), quoting 2 Restatement, 2d, § 343A, comment *f*, p 220.]

See also *Livings*, 507 Mich at 340-341 (explaining these provisions of the Second Restatement).

These circumstances—where the risk of harm from an obvious hazard can be anticipated—encompass the "unreasonable" risks of harm we referred to in *Bertrand*.  This does not suggest that all questions regarding the open and obvious doctrine are for a jury.  Instead, as discussed multiple times above, this is simply the definition of the duty.  Thus, where the Second Restatement, § 343A applies because the risk of harm remains, the duty element is satisfied, and the analysis can proceed to the other factual questions.  As the

24

Restatement's comment *f* indicates, that further analysis might also involve or be determined by the obviousness of the hazard. But those are factual questions involving breach, which can be reached only because a duty exists.

Critically, the majority ignores the section of *Bertrand* in which we held that the fact-finder had a role in resolving questions about the scope of duty when the doctrine was at issue. We stated that if a duty persists because the risk remained unreasonable despite its obviousness, i.e., the risk was foreseeable under Second Restatement, § 343A, "then the duty of the possessor of land to exercise reasonable care remains." *Bertrand*, 449 Mich at 617. But "[i]f the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide. . . . If the jury determines that the risk of harm was unreasonable, then the scope of the defendant's duty to exercise reasonable care extended to this particular risk." *Id*. "[Y]et [if] no reasonable juror would find that the danger was not open and obvious," then the court could decide the question as a matter of law. *Id*. In other words, when questions of fact exist concerning the scope of the duty under the doctrine, those questions go to the fact-finder.

To be sure, this is a rare exception from the general rule that courts decide questions of duty as a matter of law. See generally *Williams*, 429 Mich at 500. But we are not alone in providing this exception. The Wyoming Supreme Court has "recognized that in certain instances the question of duty hinges upon the determination of certain basic facts and, in those rare circumstances, the question of the existence of a duty is properly placed before the trier of fact." *Selby*, 990 P2d at 494. In *Selby*, the court concluded that a jury question existed as to whether the defendant aggravated the accumulation of ice, which would determine whether a duty existed. *Id*. at 495-496; see also *id*. at 495, citing *Endsley v*

25

*Harrisburg Med Ctr*, 209 Ill App 3d 908, 911; 568 NE2d 470 (1991) (noting that a fact question can exist whether an accumulation of ice formed naturally even though this involves duty).

By allowing duty questions regarding the doctrine to be decided by the fact-finder, *Bertrand* takes off the table one of the majority's major criticisms of the doctrine. Because issues involving the doctrine are subject to consideration by the fact-finder, it cannot be the case that the majority is truly concerned that our current law deprives plaintiffs of their chance to get before a jury.

### III. THE SIGNIFICANCE OF THE MAJORITY'S DECISION

Since *Bertrand*, this Court has continued to characterize the open and obvious doctrine as part of the duty element.[14] The majority's holding today thus strikes down a long line of caselaw stretching back decades, if not also the earlier caselaw starting in the nineteenth century. In doing so, the Court has radically disrupted premises liability law in our state. Regardless of whether the doctrine reflected duty or contributory negligence, we

---

[14] See *Livings*, 507 Mich at 337 ("[The land possessor's] duty does not extend to dangerous conditions that are open and obvious."); *Hoffner*, 492 Mich at 460-461 ("The possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid.") (citation omitted); *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 331; 683 NW2d 573 (2004) ("Under *Lugo*, a premises possessor has a duty to 'protect' an invitee from dangers that are either not 'open and obvious,' or, although 'open and obvious,' contain 'special aspects' that make such dangers 'unreasonably dangerous.' "), quoting *Lugo*, 464 Mich at 516-517; *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 143; 565 NW2d 383 (1997) (opinion by WEAVER, J.) (noting that "[u]nder the general rule there would be no duty because the danger was open and obvious"); *Lugo*, 464 Mich at 516 ("[T]he open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty.").

26

have consistently treated it as dispositive of claims of liability. That is, if the condition was obvious (and the risk of harm could not be anticipated despite its obviousness), then no matter the underlying theory, the defendant would not be liable. Today, for the first time, that is no longer the law. The effect of the majority's decision is to create a vast expanse of liability where none existed before.

And the Court accomplishes this by hollowing out the duty element in premises liability cases while at the same time claiming to reject what it recognizes as the "radical new approach to premises liability" in the Third Restatement. Yet it is hard to see much daylight between the majority's novel approach here and the "radical" Third Restatement. Under the Third Restatement, land possessors owe "a duty of reasonable care to entrants" concerning risks created by the possessor, artificial and natural conditions on the land posing risks, and other specific risks relating to affirmative duties specified elsewhere. 2 Restatement Torts, 3d, § 51, p 242. As with the majority's approach here, there is no longer an open and obvious exception to this duty. Instead, just as with our new standard, the obviousness of the risk "bears on the assessment of whether reasonable care was employed" and thus "does not pretermit the land possessor's liability" on the basis of a no-duty finding. *Id*., comment *k*, p 251. The result, therefore, is that for present purposes our test is nearly the same as the one in the "radical" Third Restatement.[15]

What the majority does not say is that the Restatement Third's approach to duty in premises liability cases—the same basic approach the majority adopts here—reflects

_____

[15] The only notable difference is that the majority has, for now at least, retained the traditional classifications of entrants to the land, i.e., invitees, licensees, and trespassers, each of which is owed a different level of care.

sweeping changes to the very concept of duty across negligence law, specified elsewhere in the Restatement. The Third Restatement provides that "[a]n actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm." 1 Restatement Torts, 3d, § 7(a), p 77.

This is a duty owed to the world at large, and there are no principled measures for limiting it. Rather, the Restatement treats duty as a matter of pure policy, and thus exceptions to it are ad hoc, based on a court's perception of better policy: "In exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification." *Id*. at § 7(b), p 77. This represents "a reconceptualization of duty that converts what the courts regard as an essential element of a negligence case into a grant of discretionary authority to individual judges to dismiss or allow negligence suits." Goldberg & Zipursky, *The* Restatement (Third) *and the Place of Duty in Negligence Law*, 54 Vand L Rev 657, 668 (2001) (discussing an earlier, similar draft of the Restatement). The duty element therefore is almost always satisfied unless a court divines some policy argument to the contrary. *Id*.

This rendering of the duty element is largely based on the view, long held by some academics, that "[a]t its core, duty . . . inescapably involves matters of policy." Cardi, *Purging Foreseeability*, 58 Vand L Rev 739, 762 (2005); see Prosser, *Palsgraf Revisited*, 52 Mich L Rev 1, 11 (1953). Under this theory, "duty is meaningless—a piece of 'artificial' gibberish." Goldberg & Zipursky, *The Moral of* MacPherson, 146 U Pa L Rev 1733, 1758 (1998), quoting Prosser, *Handbook of the Law of Torts* (1941), § 31, pp 179-180. This is the losing conception of duty from the dissent in *Palsgraf*, which contended

28

that "[e]very one owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Palsgraf*, 248 NY at 350 (Andrews, J., dissenting); see generally *The Moral of* MacPherson, 146 U Pa L Rev at 1766. The court there—and countless courts since, as noted earlier—rejected this universal conception of duty and favored instead a more limited model of duty as involving foreseeability.[16] Thus, accepting this new approach to duty, as the majority seems to do, is a fundamental shift in our basic law of negligence. See *Purging Foreseeability*, 58 Vand L Rev at 742 ("Should courts adopt the proposed Restatement Third, it will radically change many courts' understanding of duty and foreseeability in negligence cases.").[17]

---

[16] Indeed, the Third Restatement can hardly be called a true restatement of the law because its "position on foreseeability [i.e., its exclusion from the duty calculus] does not conform to the preponderance of existing practice; most jurisdictions couch their statement of the ordinary duty as contingent on there being a foreseeable risk of harm." Cardi & Green, *Duty Wars*, 81 S Cal L Rev 671, 729 (2008).

[17] The majority claims that the idea that duty involves policy is not new. What is new, however, is the Court's acceptance of the view that duty should be made to have little substantive content or limiting force because it is grounded in policy. The majority goes so far as to suggest that the foreseeability of the harm is still a relevant inquiry to the duty analysis. But the majority has entirely inverted the law on this point. Foreseeability is now relevant only to *expanding* liability: "Indeed, if a hazard is open and obvious, it should be *more* foreseeable for a defendant to notice the hazard, anticipate the danger it would cause to an invitee, and exercise reasonable care to remove or repair the danger." This not only turns the traditional application of foreseeability on its head, it also gets the broader concept of foreseeability in the duty analysis wrong. As noted above, *Palsgraf*'s canonical explanation of foreseeability in the duty analysis focuses on the foreseeability of harm to the plaintiff, not the foreseeability that the defendant will be aware of a defect. *Palsgraf*, 248 NY at 344, 346-347 ("The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension[.]"); see also 2 Restatement 2d, § 343A, p 218 ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should *anticipate the*

29

With these changes, there is no principled content to the duty element, and the element would seem to be satisfied in nearly every case. While the majority here professes that it has not yet adopted this approach, we are at least on a parallel path. The duty element in premises liability cases no longer has much substantive content: if the plaintiff is an invitee, a duty exists without any apparent exception.

This now distinguishes duty in the premises liability sphere from duty in other areas of negligence law, where foreseeability continues to play a role in shaping and limiting this element. See *In re Certified Question*, 479 Mich at 508-509. The open and obvious doctrine served that function in premises liability law, but it will no longer. The shift in this area of the law portends greater changes ahead, for I can see no principled reason why the majority would think the foreseeability analysis (as encompassed by the open and obvious doctrine) is inappropriate in premises liability but *is* appropriate in negligence law more broadly. That is to say, there is no apparent rationale for why the majority's logic here should not extend across negligence law, draining the duty element of any meaning or limiting force. The majority has thus set us on a course to radically reconceptualize the duty element in ways that will impose new costs, greatly expand liability, and increase litigation.

Consider the impact of the present cases, for example. Not only businesses but also individual homeowners will need to clear ice and snow during or soon after a storm, or they will face lawsuits from invitees. Faced with the increased threat of liability, businesses and individuals will incur new costs. And "[w]e fool ourselves when we think

_____

*harm* despite such knowledge or obviousness."). It seems apparent that the majority has not stopped to carefully consider what the current law is.

30

that the landowner is going to carry the brunt of the financial and human cost in relaxing the open and obvious principle." See *Shelton v Kentucky Easter Seals Society, Inc*, 413 SW3d 901, 919 (Ky, 2013) (Cunningham, J., dissenting). The costs get pushed to tenants and consumers.

And while the majority suggests that our current law in this area is rife with confusion, who knows what problems will come when we dispense with the open and obvious doctrine. It seems almost certain that more and more cases will go to a jury, and there will be many more disputes concerning the proper allocation of fault. See *id*. at 920 (Scott, J., dissenting) ("[B]ecause the standard for termination is now more difficult [after the majority ended the open and obvious doctrine and held that considerations of obviousness went to comparative fault], many of these cases will proceed on to trial with the concomitant increase in litigation costs and expenses for both sides . . . ."). It is also possible that the focus of trial and appellate courts' attention will now be on another element that contains a foreseeability analysis: proximate causation. See generally *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994) (noting that proximate causation "involves examining the foreseeability of consequences"). No doubt defendants will make some of the same basic arguments to the judge that there is no triable issue of fact concerning proximate causation. See *Purging Foreseeability*, 58 Vand L Rev at 742-743.[18] The supposed problem might simply mutate and persist.

---

[18] It is worth adding the lament of a fellow jurist dissenting from a decision similar to the majority's decision today:

> It [i.e., the open and obvious doctrine] was a doctrine that was based on personal responsibility and common sense; yet, one that was unforgiving of inattention, forgetfulness, or risky conduct. Still, it protected those whose

The result is that far from clarifying the law, the majority has unsettled an important area of the law and vastly expanded the scope of liability to which possessors of land are exposed.

## IV. THE PROPER APPROACH

## A. THE STANDARD

Under any standard with a meaningful duty element, plaintiffs in the present cases would lose. Nevertheless, I believe it is proper to briefly explain my view that the test set forth in §§ 343 and 343A of the Second Restatement is the appropriate standard for the duty element and that the "special aspects" test is simply an application of this portion of the Restatement. As the majority discusses, this Court in *Lugo*, 464 Mich at 517, began to emphasize "special aspects" as exceptions to the doctrine. The Court has identified two such aspects—those in which the danger is unreasonable and those in which the danger is effectively unavoidable. *Hoffner*, 492 Mich at 463.

It is apparent to me that these special aspects formed as examples of the Second Restatement approach. As already stated, and as was discussed in *Livings*, we have

distractions were warranted, as well as those who could not reasonably perceive the real danger around or underlying what they could see. . . . Simply put, it was a doctrine crafted within the perceptions of the Americans of its time: a doctrine that negated the considerable time and expense of litigation in cases that otherwise generally could not have been won in front of the juries of the day, and a doctrine that kept property liability insurance premiums within its confines. It was a doctrine whose lifetime spanned the greatest opportunity and economic growth this nation has ever known. It was not the cause of this growth, personal responsibility was—but it did play its part along with many, many other factors of our social, economic, and political structures of the time. [*Shelton*, 413 SW3d at 920 (Scott, J., dissenting).]

32

repeatedly claimed to have adopted portions of the Second Restatement approach and that

the special-aspects test is consistent with that Restatement.[19] In *Bertrand*, we indicated our

approval of §§ 343 and 343A and stated that they amounted to the rule that there was no

duty to protect against open and obvious defects unless "the risk of harm remains

unreasonable, despite its obviousness or despite knowledge of it by the invitee . . . ."

*Bertrand*, 449 Mich at 611. While we did not directly describe how a risk could remain

unreasonable despite its obviousness, it is clear in context what we meant: by quoting and

citing § 343A, we signified that such a risk remained unreasonable when "the possessor

---

[19] *Livings* stated:

> Our open-and-obvious jurisprudence has long been informed by the Restatement. As far back as 1938, we began relying on the relevant section and comments of the First Restatement. And we have often utilized the Second Restatement since its appearance in 1965, going so far as to say that § 343 and § 343A had been "adopted" into our law. In fact, our caselaw has already incorporated one of other the illustrations listed in comment *f* to § 343A. See *Bertrand*, 449 Mich at 624 (applying Illustration 3).

> Despite the fact that our current framework uses different terminology, we have stressed that our law remains consistent with the Restatement approach. In *Lugo*, we stated that the special-aspects test was

>> consistent with § 343A of the Restatement, which indicates that a possessor of land is only liable to invitees for harm caused by an obvious condition if the possessor should "anticipate the harm." . . . Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition. [*Lugo*, 464 Mich at 525.]

> See also *Hoffner*, 492 Mich at 479 (noting that our standard reflects caselaw that relied on § 343 and § 343A of the Restatement and remains consistent with those provisions). [*Livings*, 507 Mich at 343 (citations omitted).]

33

should anticipate the harm despite such knowledge or obviousness." 2 Restatement, 2d, § 343A, p 218. *Bertrand* later used the term "special aspects" to refer to features of the hazard that made the risk of harm unreasonable. *Bertrand*, 449 Mich at 614.[20] In the context of our endorsement of Restatement Second, § 343A, it seems plain that the special aspects we referred to rendered the danger unreasonable because they made it foreseeable (to the possessor) that an invitee would confront it despite its obviousness.

*Lugo* simply employed the discussion from *Bertrand* and emphasized the "special aspects" phrasing. See *Lugo*, 464 Mich at 516-518. It broadly stated the rule as providing

> that, with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability. [*Id*. at 517-518.]

The phrasing is almost straight from Restatement Second, § 343A, with the addition of the term "special aspect."

---

[20] Elsewhere, *Bertrand* indicated that these features represented "something unusual" about the condition concerning its " 'character, location, or surrounding conditions[.]' " *Bertrand*, 449 Mich at 617, quoting *Garrett v WS Butterfield Theatres, Inc*, 261 Mich 262, 263-264; 246 NW 57 (1933). We took the quoted line from *Garrett*, which more fully stated that " 'steps [connecting floors in a building] are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it.' " *Bertrand*, 449 Mich at 615, quoting *Garrett*, 261 Mich at 263-264. This seems like just another way of saying that steps are usually open and obvious but that some steps might not be.

*Lugo*'s two examples of "special aspects" are consistent with the Restatement Second, § 343A because each involves a scenario in which the possessor might anticipate that the invitee will confront an obvious hazard. The first was an unavoidable condition— standing water at the only exit of a commercial building. *Id*. at 518. The location of the hazard, trapping the invitees, would make it clear that some might confront the hazard to leave. Likewise, the second example relates to situations in which the possessor might foresee injury. The example given of a condition entailing "an unreasonably high risk of severe harm" was "an unguarded thirty foot deep pit in the middle of a parking lot." *Id*. Most people do not expect to confront deadly threats in everyday settings. We might expect some dips or holes in a parking lot, but not life-threatening ones. So an invitee might not be sufficiently on guard for these sorts of hazards, and a premises possessor might reasonably anticipate this.[21] The two examples thus seemed designed to capture a number of the scenarios covered by Restatement Second, § 343A. They are instances of when "the 'obviousness' of a condition or the fact that the injured party may have been in some sense 'aware' of it may not always serve as adequate warning of the condition and the consequences of encountering it." *Ward*, 136 Ill 2d at 148-149.

It is worth noting that under this approach, "foreseeability is not boundless. That something 'might conceivably occur,' does not make it foreseeable." *Bruns v Centralia*,

---

[21] It also seems that this special aspect was motivated by general considerations of when a duty should exist. As noted, under *In re Certified Question*, 479 Mich at 508-509, courts determine whether a duty exists by analyzing, among other things, the burden on the defendant and the nature of the risk. Here, the burden on the defendant to avoid things like 30-foot pits would seem, in general, rather minimal, compared to the nature of the risk and severity of potential harm to the invitees, which is serious bodily harm or death.

2014 IL 116998, ¶ 33; 21 NE3d 684 (2014) (citations omitted). Rather, "under Michigan common law, foreseeability depends on whether a reasonable person could anticipate a given event might occur under certain conditions." *Illiades v Dieffenbacher North America Inc*, 501 Mich 326, 331; 915 NW2d 338 (2018). The anticipation must be reasonable and tethered to the circumstances. See *Bruns*, 2014 IL 116998 at ¶ 33. "An approach based on foreseeability has the further benefit that it is common in the law" across numerous areas. *Bertin v Mann*, 502 Mich 603, 616; 918 NW2d 707 (2018).[22]

Given our uninterrupted assertions that the open and obvious test is consistent with §§ 343 and 343A of the Second Restatement, and given our long use of that portion of the Second Restatement, I think the only sensible reading of our caselaw is that the "special

---

[22] It is true that we have suggested that foreseeability is not a consideration in the special-aspects analysis. In *Mann*, 470 Mich at 331-332, we stated that " 'special aspects' are not defined with regard to whether a premises possessor should expect that an invitee will not 'discover the danger' or will not 'protect against it,' . . . but rather by whether an otherwise 'open and obvious' danger is 'effectively unavoidable' or 'impose[s] an unreasonably high risk of severe harm' to an invitee . . . ." (Citation omitted; alteration in original.) And in *Hoffner*, 492 Mich at 474-475, we rejected the argument that

> *mere anticipation* of an injury creates, per se, a duty of care and a jury-submissible question of fact . . . because harm can be anticipated from any number of common conditions. Indeed, when could it *ever* be said that harm could not be reasonably anticipated from an open and obvious condition? Ordinary open and obvious conditions are categorically conditions from which harm may be anticipated . . . .

It is evident that in *Mann*, and especially in *Hoffner*, we were concerned with a foreseeability test because we thought it was no limitation at all given that harm could arise from every open and obvious hazard.

Such a concern misses the point of the Restatement Second: the thrust of the rule is not that the injury alone could be anticipated. Rather, it is that the possessor could foresee that a reasonable person in the invitee's circumstances would confront the hazard given the characteristics of that hazard, resulting in harm.

36

aspects" test is simply an application of the Second Restatement, which should continue to govern.[23] The majority abruptly departs from more than a century of caselaw in which the obviousness of a hazard generally cuts off the defendant's liability. By contrast, my view gives meaning and continuity to our entire body of caselaw on the doctrine. And as explained, it makes the duty element in premises liability cases coherent with our general approach to duty, in that each would require foreseeability for a duty to arise. Finally, this approach better reflects the prudence and caution necessary in cases involving the common law. As stewards of this body of law, we are obligated to exercise restraint and avoid major shifts that will no doubt have unforeseen effects. See *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 734-735; 983 NW2d 855 (2022) (VIVIANO, J., dissenting). The majority today exercises no such restraint.

## B. APPLICATION

As applied to the present cases, the Second Restatement, as framed by our caselaw, precludes relief. *Kandil-Elsayed v F & E Oil, Inc*, is a simple slip-and-fall-on-ice case. A straightforward application of *Hoffner*, which would remain good law under my view, precludes relief. Plaintiff was attempting to enter a commercial establishment to pay for gas when she slipped on plainly visible snow and ice. In *Hoffner*, 492 Mich at 457, the plaintiff similarly fell on ice when entering a gym. *Hoffner*, applying the special-aspects

---

[23] It goes without saying that we are under no obligation to follow the Restatement. Indeed, I have explained here why I would not adopt the majority's approach, which approximates that of the Third Restatement. But where decades of our precedent express our adherence to portions of the Second Restatement, we cannot simply ignore that Restatement. Thus, regardless of whether I would adopt the pertinent portions of the Second Restatement in the first instance, I would follow our extensive body of caselaw endorsing it.

test, noted that there was no evidence that simple ice was unreasonably dangerous, and there was nothing forcing the plaintiff to confront the risk. *Id*. at 473. The same is true here. There has been no evidence presented that there was anything particularly dangerous about the snow and ice here. Moreover, plaintiff plainly could have avoided it, given that she was able to do so later when she left the building. For these reasons, under Restatement Second, §§ 343 and 343A, a premises possessor could not anticipate that reasonable invitees would confront the snow and ice here. Thus, there was no duty owed to plaintiff.

In *Pinsky v Kroger Co of Mich*, there are two relevant questions. First, was the hazard open and obvious? Second, if so, did defendant nonetheless owe a duty to plaintiff under the appropriate test? With regard to the first question, a hazard is open and obvious if a reasonable person would observe it upon casual inspection. *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474; 499 NW2d 379 (1993). The hazard here was a white wire tied at about waist-height to a candy-and-snack display in a checkout aisle but running down to below knee-height and attached to a baby formula display in the middle of the aisle. The Court of Appeals correctly determined that the hazard was open and obvious because it was plainly visible to anyone walking down the aisle. Indeed, plaintiff herself noted that she could see the cable in the photographs taken after the incident. I would also note that, although the Court of Appeals characterized the cable as being below knee-height, it is actually tied to the candy/snack display at around waist-height, and it then runs down diagonally toward the baby formula display. This would seem to make it even more apparent.

The Court of Appeals also properly determined that there were no applicable exceptions to the open and obvious doctrine. "A checkout lane closed by a cable is an

everyday occurrence that a reasonably prudent person would be expected to see and avoid by choosing an alternative route." *Pinsky v Kroger Co of Mich*, unpublished per curiam opinion of the Court of Appeals, issued May 27, 2021 (Docket No. 351025), p 4. Tripping over a wire in a store is not appreciably distinct from falling on snow, ice, ordinary potholes, or stairs. Indeed, stairs could pose an even greater risk of danger, as a fall down multiple stairs can severely injure or even kill. Yet we have not held that open and obvious snow, ice, small potholes, or stairs can give rise to liability. *Hoffner*, 492 Mich at 475 ("The small patch of ice at issue here is of the same character as those open and obvious hazards—like an ordinary pothole or flight of stairs—that this Court has repeatedly stated do not give rise to liability for a premises owner.") (emphasis omitted).[24]

For these reasons, I would affirm the decisions below granting summary disposition in both cases.

---

[24] Plaintiff has also argued that she was distracted by displays when she fell and that this is a legally relevant factor. It does not appear that she preserved this argument below, but even assuming that distraction might be relevant, she has offered no evidence that she was in fact distracted. At her deposition, she never indicated or implied that she was distracted. She said that she had been to that grocery store many times, had shopped on this occasion for 45 minutes, and had checked out but had to go back into the shopping area to get a new bag of flour. She went up the aisle immediately adjacent to the one she had just checked out of and, she testified, did not see anything obstructing her path. She was instead "looking ahead into the store." It was only after she fell that she saw the cart with the baby formula display. She was asked again if she did not notice that display before the accident. She responded, "No, I mean, the cart—the basket was in the aisle but it was not obstructing my path . . . . That path was clear." Asked the same question again, she said that the "best that I can tell you" is that she elected to walk to the side of the cart and that she "was aware of it but I was not aware of anything blocking the area to the side of it." Further, she said she was not "conscious of" the cart at the time, but she would not have chosen to walk into it. Her deposition therefore shows she was not distracted by the baby formula or any other goods at the time of her fall. She has pointed to no other evidence suggesting that she was distracted. And she gives no other reason why the premises holder should have anticipated she would confront the hazard.

39

## V. CONCLUSION

The majority's decision will have repercussions across the state and throughout our law. Every person and entity possessing real property will feel its effects. The open and obvious doctrine was not perfect, but it reflected commonsense intuitions and the concept of duty in our law more generally. In overturning this doctrine, the majority misreads or ignores decades of precedent and saps the critical duty element of any real limiting force. And I see no principled reason why today's decision on premises liability will not extend to all of negligence law. The result will greatly expand liability, lead to more litigation, and destabilize the law. Few of our recent decisions in this area of law have had the potential to wreak such havoc. I dissent.

David F. Viviano
Brian K. Zahra